# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00492-CV

**Cities of Dickinson, Friendswood, La Marque, League City, Lewisville and Texas City, Appellants**

**v.**

**Public Utility Commission of Texas and Texas-New Mexico Power Company, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GV-08-000014, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

Cities of Dickinson, Friendswood, La Marque, League City, Lewisville, and Texas City (collectively, "the Cities"), appeal from the trial court's judgment affirming an order on rehearing of the Public Utility Commission of Texas ("the Commission") entered in an administrative docket in which Texas-New Mexico Power Company (TNMP) filed an application to adjust carrying charges on its competition-transition-charge balance. The Cities argue that the trial court erred in affirming the Commission's adoption of a 7.08% cost of debt in calculating the carrying charges on TNMP's CTC. Because we hold that the trial court did not err in affirming the Commission's use of a 7.08% cost of debt, we affirm the judgment of the trial court.

## BACKGROUND

The administrative decision for which the Cities sought judicial review was issued by the Commission in Docket No. 33106, *Application of Texas-New Mexico Power Company to*

*Adjust Carrying Charges Pursuant to P.U.C. Subst. R. 25.263*. In order to address the sole issue on appeal, a brief explanation of the deregulation of the electricity market, as well as the history of TNMP's participation in Commission proceedings, is necessary.

Deregulation involved the transition of the electricity market from a regulated industry to a competitive, deregulated market. *See* Tex. Util. Code Ann. §§ 39.001-.910 (West 2007 & Supp. 2008). This transition involved changes to the provision of electricity, requiring formerly integrated utilities to "unbundle" and divide into three separate entities, each described by its separate function: (1) retail electric providers, (2) power-generation companies, and (3) transmission-and-distribution utilities (TDUs). *Id.* § 39.051(a)-(b); *see also CenterPoint Energy Houston Elec., LLC v. Gulf Coast Coal. of Cities*, 252 S.W.3d 1, 7 (Tex. App.—Austin 2008, pet. filed). TNMP now operates as a TDU. Under deregulation, each utility filed proposed rates for their affiliated TDU through administrative proceedings referred to as unbundled cost-of-service (UCOS) cases. *See* 16 Tex. Admin. Code § 25.344 (2008) (Pub. Util. Comm'n, Cost Separation Proceedings). In TNMP's UCOS case, it agreed to a "black box" settlement in lieu of undergoing a full proceeding. In reaching this settlement, TNMP and the Commission agreed to a total amount that TNMP could recover through its rates without specifying any of the individual numbers used to calculate that amount, including TNMP's cost of debt.

Deregulation also allowed formerly regulated utilities to recover investments made in generation assets, such as nuclear power plants, that would generally not be recoverable in a competitive market. *See CenterPoint*, 252 S.W.3d at 8-9. Each utility was allowed to recover these "stranded costs" through a competition transition charge (CTC) passed through to rate payers by its affiliated TDU. *See* 16 Tex. Admin. Code § 25.345 (2008) (Pub. Util. Comm'n, Recovery of

2

Stranded Costs Through Competition Transition Charge (CTC)); *see also CenterPoint*, 252 S.W.3d at 10. Two years after deregulation was introduced, the Commission began conducting "true-up proceedings" to reconcile the CTC for each TDU with its remaining stranded costs. Tex. Util. Code Ann. §§ 39.201(*l*), .262(c). In these true-up proceedings, the TDUs were authorized to seek interest, or carrying charges, on their CTC balance. *See* 16 Tex. Admin. Code § 25.263(*l*)(3) (2008) (Pub. Util. Comm'n, True-up Proceeding). At the time the Commission issued its final order in TNMP's true-up proceeding in 2005, Rule 25.263(*l*)(3) provided:

> The TDU shall be allowed to recover, or shall be liable for, carrying costs on the true-up balance. Carrying costs shall be calculated using the utility's cost of capital established in the utility's UCOS proceeding, and shall be calculated for the period of time from the date of the true-up final order until fully recovered.[1]

28 Tex. Reg. 5993 (2003), *amended* 31 Tex. Reg. 5603 (2006).[2]

This calculation was problematic in TNMP's true-up proceeding, Docket No. 29206, because its UCOS proceeding had ended in settlement, and therefore no cost of capital had been "established in the utility's UCOS proceeding." *See id.* The administrative law judge (ALJ) handling TNMP's true-up proceeding calculated a replacement for the UCOS cost of capital using the cost of debt proposed by TNMP in its UCOS application. The Commission, however, rejected the ALJ's approach, stating that TNMP's proposed cost of debt in its UCOS application "was neither

---

[1] In *Centerpoint Energy, Inc. v. Public Utility Commission*, 143 S.W.3d 81, 84 (Tex. 2004), the Texas Supreme Court held that carrying charges sought under Rule 25.263(*l*)(3) must accrue from January 1, 2002, rather than the date of the utility's true-up final order. After *Centerpoint*, the Commission continued to calculate carrying costs using the cost of capital established in a utility's UCOS proceeding.

[2] While Rule 25.263 was also amended in 2004, subsection (*l*) remained unchanged. *See* 29 Tex. Reg. 3585 (2004), *adopted* 29 Tex. Reg. 5338 (2004).

evaluated by the Commission nor adopted by the Commission in its order in that proceeding." The Commission chose instead to use a 6.67% cost of debt based on data reported in TNMP's 2001 annual report. Using this cost of debt and other data obtained from a generic UCOS proceeding that had been held to resolve threshold issues applicable to all utilities, the Commission determined in Docket No. 29206 that the appropriate rate for TNMP's CTC carrying charge was 10.93%.

After the Commission issued its final order in Docket No. 29206, Rule 25.263(*l*)(3) was amended to allow TDUs to seek revised carrying charges and amended CTCs. *See* 31 Tex. Reg. 5603 (2006). The relevant portions of Rule 25.263(*l*)(3), as amended, are as follows:

> The TDU shall be allowed to recover, or shall be liable for, carrying costs on the true-up balance . . . . The TDU shall file an application to adjust the carrying costs and amend its CTC tariff on a prospective basis in conformance with this paragraph within 30 days of the effective date of an amendment to this paragraph. The establishment of the interest rate used to calculate carrying charges shall be based upon the following:
>
> (i) The weighted average of the TDU's unadjusted historical cost of debt (HC) and an adjusted form of the TDU's marginal cost of debt (MC), with the weightings based on the utility's most recently authorized capital structure. The HC component shall be the cost of debt as determined in a final commission order, provided that the order was entered within three years of the effective date of this rule, for a rate proceeding in which the TDU's cost of debt was explicitly addressed or can be determined based upon the order's authorized weighted-average cost of capital (overall rate of return on invested capital), proportions of debt and equity, and allowed return on equity . . . .
>
> (ii) If the commission, within three years prior to the effective date of this rule, did not enter a final order in a rate proceeding that addresses the TDU's cost of debt, the HC component used in the interest rate determination described in the preceding clause shall be based upon the cost of debt reported in the utility's most recent Earnings Monitoring Report filed pursuant to § 25.73 of this title (relating to Financial and Operating Reports), adjusted for known and measurable changes.

16 Tex. Admin. Code § 25.263(*l*)(3).

4

In Docket No. 33106, the proceeding giving rise to this appeal, TNMP sought to revise its carrying charges pursuant to the amendment to Rule 25.263(*l*)(3). In its application, TNMP proposed an 8.31% carrying charge on its CTC balance based on a historical cost of debt of 6.67%, reflecting the cost of debt used in Docket No. 29206. This calculation was based on the assumption that 6.67% was "the cost of debt as determined in a final commission order" in Docket No. 29206, which "was entered within three years of the effective date of this rule, for a rate proceeding in which the TDU's cost of debt was explicitly addressed." *Id.* The Commission disagreed, finding that it did not explicitly address TNMP's cost of debt in Docket No. 29206, but merely used a "proxy formula." The Commission instead calculated TNMP's carrying charges using the cost of debt of 7.08% reported by TNMP in its 2005 earnings monitoring report, resulting in a revised CTC carrying charge of 8.31%.

The Cities sought judicial review of the Commission's final order, claiming that the appropriate rate for TNMP's CTC carrying charge is 8.04%, using the cost of debt found in Docket No. 29206.[3] The trial court affirmed the Commission's order and this appeal followed.

## STANDARD OF REVIEW

This case turns solely on a question of administrative rule interpretation. Administrative rules are construed in the same manner as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). Statutory construction is a matter of law, subject to de novo review. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). When construing

---

[3] The Cities have exclusive, original jurisdiction over TNMP's rates, operations, and services within their respective incorporated limits and are entitled to judicial review of Commission orders relating to TNMP. *See* Tex. Util. Code Ann. §§ 33.001(a), .026 (West 2007).

5

administrative rules, "[a]n administrative agency's interpretation of its own rules is entitled to great weight and deference; it controls unless plainly erroneous or inconsistent with the agency's enabling statute." *Ackerson v. Clarendon Nat'l Ins. Co.*, 168 S.W.3d 273, 275 (Tex. App.—Austin 2005, pet. denied).

## DISCUSSION

In a single issue on appeal, the Cities argue that the trial court erred in affirming the Commission's calculation of carrying charges pursuant to Rule 25.263(*l*)(3). While the Commission applied the calculation method described in Rule 25.263(*l*)(3)(ii), in which cost of debt is adopted from the utility's most recent earnings monitoring report, the Cities maintain that the proper calculation method in this case is found in Rule 25.263(*l*)(3)(i), in which cost of debt is adopted from a final Commission order in a rate proceeding in which TNMP's cost of debt was explicitly addressed, provided the order was issued within three years of the effective date of the rule. The Cities contend that TNMP's cost of debt was explicitly addressed in the Commission's final order in Docket No. 29206, which the parties agree was entered within three years of the effective date of the rule, and therefore that the calculation method found in Rule 25.263(*l*)(3)(i) should apply. Alternatively, the Cities argue that even if TNMP's cost of debt was not explicitly addressed in the Commission's final order in Docket No. 29206, the cost of debt "can be determined based upon the order's authorized weighted-average cost of capital . . . , proportions of debt and equity, and allowed return on equity," and that Rule 25.263(*l*)(3)(i) should apply on that basis. In response, the Commission and TNMP assert that because a "proxy formula" was used for TNMP's cost of debt in the Commission's final order in Docket No. 29206, neither calculation method described in

6

Rule 25.263(*l*)(3)(i) is applicable, and therefore the calculation method found in Rule 25.263(*l*)(3)(ii) must be used.

To clarify, the three methods of determining cost of debt for purposes of Rule 25.263(*l*)(3) can be summarized as follows:

> **Option A**:  If a Commission order was entered in a rate proceeding within three years of the effective date of the rule and cost of debt was explicitly addressed, the cost of debt found in that order applies.  *See* Rule 25.263(*l*)(3)(i).
>
> **Option B**:  If a Commission order was entered in a rate proceeding within three years of the effective date of the rule in which cost of debt was not explicitly addressed but can be determined based upon the order's authorized weighted cost of capital, proportions of debt and equity, and allowed return on equity, the cost of debt as determined from such data applies.  *See id.*
>
> **Option C**:  If there is no final order in a rate proceeding that explicitly addresses cost of debt or from which cost of debt can be determined using the data described in Option 2, the cost of debt is adopted from the utility's most recent earnings monitoring report.  *See id.* § 25.263(*l*)(3)(ii).

The Cities contend that Option A applies in the present case, or, in the alternative, Option B.  TNMP and the Commission, on the other hand, claim that neither Option A nor Option B is applicable, and therefore Option C must be used.  In light of this regulatory framework, we must first determine whether the Commission's final order in Docket No. 29206 "explicitly addressed" TNMP's cost of debt.

In its final order in Docket No. 29206, the Commission expressly found that cost of debt was "neither evaluated by the Commission nor adopted by the Commission" in TNMP's UCOS case, because that proceeding ended in settlement.  The Commission chose instead to rely on TNMP's 2001 annual report, stating that TNMP "reported data supporting a cost of debt of 6.67%."

The Commission now argues that by relying on data from the annual report, it merely "substituted a formulaic approximation" of cost of debt in Docket No. 29206, and that because a proxy formula was used, cost of debt was not "explicitly addressed" as required by Rule 25.263(*l*)(3)(i).

The Commission interprets the phrase "explicitly addressed," as it appears in Rule 25.263(*l*)(3)(i), to require some greater level of evaluation than the use of a proxy formula. We must defer to an agency's interpretation of its own rule unless such interpretation is plainly erroneous or inconsistent with the rule. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *see also Continental Cas. Co. v. Rivera*, 124 S.W.3d 705, 710 (Tex. App.—Austin 2003, pet. denied) ("[A]n administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference."). In light of the deference afforded to agency interpretation, we cannot say that the Commission's interpretation of "explicitly addressed" in Rule 25.263(*l*)(3)(i) is plainly erroneous or inconsistent with the plain language of the rule. As a result, we hold that Option A, as described above, is inapplicable to the present case.

The Cities argue, in the alternative, that Option B applies because cost of debt can be determined based on the weighted-average cost of capital, proportions of debt and equity, and allowed return on equity used in the Commission's final order in Docket No. 29206. In response, the Commission points out that in Docket No. 29206, the proxy formula for cost of debt was actually used to calculate TNMP's weighted-average cost of capital. Because the cost-of-debt proxy was used to determine this number, any reverse calculation using weighted-average cost of capital to

8

determine cost of debt would simply produce the cost-of-debt proxy.[4] According to the Commission, the alternative calculation method found in Option B applies to those cases in which a prior order includes an authorized weighted-average cost of capital, debt to equity ratio, and allowed return on equity, but does not include a cost of debt. In that circumstance, where the Commission has approved amounts for all data other than the cost of debt, the cost of debt can be determined using the remaining data. In the present case, however, the weighted-average cost of capital figure was not determined independently from the cost of debt, but was actually calculated using a proxy formula for the cost of debt. As a result, we agree with the Commission's interpretation that Option B, as described above, does not apply in the present case, where weighted-average cost of capital was calculated based on a proxy formula for cost of debt.

In light of our determination that the Commission had not, within three years of the amendment to the rule, "explicitly addressed" TNMP's cost of debt in a final order, and that the cost of debt could not be determined from weighted-average cost of capital, debt to equity ratio, and allowed return on equity as described in a final order, the only remaining calculation method available in this case is Option C, described in Rule 25.263($l$)(3)(ii), in which cost of debt data is used from the company's most recent earnings monitoring report. This calculation method was properly adopted in the Commission's final order in the administrative proceeding giving rise to this appeal.

---

[4] In other words, if a proxy formula for X is used in an equation to determine Y based on X, any subsequent calculation to determine X based on Y would simply yield the proxy formula for X.

9

## CONCLUSION

Having determined that the trial court did not err in affirming the Commission's determination of cost of debt in the administrative docket at issue, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Puryear, Waldrop and Henson

Affirmed

Filed:   May 1, 2009