# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00526-CV

**Office of Public Utility Counsel and the Public Utility Commission of Texas, Appellants**

**v.**

**Texas-New Mexico Power Company, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-GN-09-000071, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

This is an administrative appeal of a final order of the Public Utility Commission (the "Commission") in a contested case involving Texas-New Mexico Power Company's ("TNMP") revised competition transition charge ("CTC") interest rate. TNMP filed a suit for judicial review of the Commission's decision, which determined the effective date of the revised interest rate. The Office of Public Utility Counsel ("OPC") intervened in support of the Commission's order.[1] The trial court reversed the Commission's order, and the Commission and OPC appealed. We will reverse the trial court's order and render judgment affirming the Commission's order.

---

[1] Texas Industrial Energy Consumers and the Cities of Dickinson, Friendswood, La Marque, League City, Lewisville, and Texas City (the "Cities") also intervened in the proceedings below. The Cities have filed an amicus curiae brief in this Court in support of the Commission's determination.

## FACTUAL AND PROCEDURAL BACKGROUND

TNMP is a transmission and distribution utility that was "unbundled" from a vertically integrated utility in the restructuring of the Texas market. *See generally* Tex. Util. Code Ann. §§ 11.001-66.017 (West 2007 & Supp. 2010) (hereinafter "PURA"). As a regulated utility, TNMP provides services at rates that remain subject to traditional cost-of-service regulation by the Commission under PURA. *See id.* One of the rates and charges set by the Commission is TNMP's CTC, the mechanism through which the utility recovers its stranded costs, with interest.[2]

In TNMP's true-up case, the Commission determined the rate of interest to be applied to TNMP's stranded costs from their inception (January 1, 2002, when competition began) to the date of the true-up. In its final true-up order, issued July 22, 2005, the Commission established a stranded-cost balance for TNMP of $128,820,365 as of January 1, 2002. The Commission added interest (carrying charges) of $39,166,214 to these stranded costs, calculated at an annual rate of 10.93%. The final net stranded-cost recovery authorized by the Commission was $110,603,855. *See State v. Public Util. Comm'n*, 246 S.W.3d 324, 331 (Tex. App.—Austin 2008, pet. filed).

On November 4, 2005, TNMP initiated Docket No. 31994 (the "CTC Docket"), which involved the carrying-charge rate on its CTC as well as a number of other issues. The Commission referred the matter to an administrative law judge ("ALJ") at the State Office of Administrative Hearings ("SOAH"). Before the CTC Docket proceeded to a hearing on the merits,

---

[2] *See generally State v. Public Util. Comm'n*, No. 08-0421, 2011 WL 923949, at *1-2 (Tex. Mar. 18, 2011) (reviewing statutory scheme). "Stranded costs" refer to the portion of the book value of a utility's generation assets that is projected to be unrecovered through rates that are based on market prices. *Id.*; *see also City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 237 (Tex. 2001).

however, TNMP and all parties except the Cities entered into a non-unanimous stipulation (or indicated that they did not oppose the stipulation).[3] Of relevance to this appeal, the NUS provided that "[i]nterest on the stranded cost balance beginning July 22, 2005 will be 10.93%. That interest rate will prevail unless and until the Commission validly adopts a new rule [regarding the interest rate] at which time the terms of the new rule will apply."

In fact, during the pendency of the CTC Docket, the Commission was in the process of amending its true-up rule, 16 Tex. Admin. Code § 25.263, which provided a new formula for computing the stranded-cost interest rate.[4] The Commission completed the rulemaking after the NUS was signed and filed but before the NUS went before the Commission for review. The effective date of the new rule was July 20, 2006.

After a hearing on the NUS, the ALJ recommended in its proposal for decision that the Commission reject the stipulation. In its final order dated November 2, 2006 (the "CTC Order"), the Commission declined to adopt the ALJ's proposal for decision and instead adopted the NUS. In the CTC Order, the Commission made reference to the new rule and determined that, "[u]nder the terms of the NUS, the new version of the rule sets the interest rate on the stranded-cost balance from the date the rule is effective." In addition, the Commission made the following fact findings:

---

[3] The parties variously refer to this agreement as a non-unanimous stipulation and a non-unanimous settlement. For clarity, we will refer to it as the "NUS."

[4] Specifically, the Commission proposed an amendment to rule 25.263(*l*)(3) to change the interest rate on the utilities' CTC balances from the utility's cost of capital established in the utility's unbundled cost-of-service case to the utility's most recently authorized or reported cost of debt, and to require the transmission and distribution utilities, like TNMP, to apply for revised carrying charges on their CTC balances. *See City of Dickinson v. Public Util. Comm'n*, 284 S.W.2d 449, 451 (Tex. App.—Austin 2009, no pet.).

3

16A. The NUS sets the interest rate of 10.93% until the Commission validly adopts a new rule, at which time the terms of the new rule will apply.

. . . .

41. The NUS sets an interest rate of 10.93%, which is subject to change when the Commission validly adopts a new rule setting the interest rate.

41A. P.U.C. Subst. R. 25.263(*l*)(3) was revised, effective July 20, 2006, and establishes a formula for determining interest on post-true-up balances.

In Ordering Paragraph No. 1 of the CTC Order, the Commission approved TNMP's application to set the CTC "as modified by the NUS." The Commission further ordered TNMP to file a tariff that conformed to the decisions contained in the CTC Order and that updated the interest amounts approved therein. TNMP did not appeal from the Commission's final CTC Order.

In accordance with the new rule, which required each transmission and distribution utility to file an application to adjust the carrying costs on its CTC within 30 days of the effective date of the rule, TNMP initiated Docket No. 33106 (the "Interest Rate Docket"). In its final order in the Interest Rate Docket, the Commission approved TNMP's recommended CTC interest rate revision of 8.31%. This Court considered the ratepayer cities' challenges to the 8.31% interest rate in *City of Dickinson v. Public Utility Commission*, 284 S.W.2d 449 (Tex. App.—Austin 2009, no pet.), ultimately affirming the Commission's determination, *see id.* at 454. Thereafter, TNMP initiated the proceeding that is the subject of this appeal, Docket No. 35038 (the "Tariff Docket").

The instant dispute arising from the Tariff Docket proceedings concerns exactly when the new 8.31% interest rate went into effect. TNMP argued that the new rate would only go into effect on the entry of a final order in the Tariff Docket, and that any earlier effective date would

4

result in impermissible retroactive ratemaking. The Commission Staff took the position that the new rate went into effect on December 27, 2007—the date claimed by Staff as the effective date of the Commission's final decision in the Interest Rate Docket. OPC urged that, in accordance with the CTC Order adopting the NUS, the new rate went into effect on the effective date of the revised rule, July 20, 2006.

At the Tariff Docket hearing, each party introduced evidence in support of its respective position. The ALJ's proposal for decision recommended the Commission Staff's proposed date. The Commission declined to adopt the ALJ's interpretation, however, and instead concluded that the CTC Order had adopted the agreement of the parties regarding the effective date of the interest rate change and applied the revised interest rate from July 20, 2006, when the revised rule went into effect. It memorialized these findings by an order dated October 22, 2008 (the "Effective Date Order"). TNMP sought judicial review of the Effective Date Order, and the trial court reversed "the Commission's decision to set a retroactive effective date [of] July 20, 2006 for the 8.31% carrying charge rate." The Commission and OPC now appeal.

**DISCUSSION**

On appeal, the Commission and OPC argue that, in issuing the Effective Date Order, the Commission properly interpreted its 2006 CTC Order to require that the revised-rule interest rate apply going forward from July 20, 2006. They urge that because this interpretation of the CTC Order is reasonable and supported by the language of that prior order, this Court should defer to the Commission's interpretation in construing the Effective Date Order under review.

5

*Standard of Review*

This case concerns a suit for judicial review of a final agency decision in a contested case. In general, we review the Commission's final order under the substantial evidence standard of review described in section 2001.174 of the Texas Administrative Procedure Act. *See* Tex. Util. Code Ann. § 15.001 (West 2007); Tex. Gov't Code Ann. § 2001.174 (West 2008). Under the substantial evidence rule, we give significant deference to the agency in its field of expertise. *Railroad Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995); *AEP Tex. North Co. v. Public Util. Comm'n*, 297 S.W.3d 435, 447 (Tex. App.—Austin 2009, pet. denied). We presume that the Commission's order is supported by substantial evidence, and the complaining parties have the burden to overcome this presumption. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994).

Any questions of statutory construction are reviewed de novo, although an agency's interpretation of the statute it administers is entitled to serious consideration so long as it is reasonable and does not conflict with the statute's language. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631-32 (Tex. 2008). A court applying the substantial evidence rule may reverse the agency's order when the agency has made a prejudicial error of law, including a violation of a constitutional or statutory provision, or when the order is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code Ann. § 2001.174(2).

In construing orders of an administrative agency, we apply the same rules as when we interpret statutes; the ultimate object of construction is to ascertain the intent of the

6

administrative body. *Railroad Comm'n v. Home Transp. Co.*, 670 S.W.2d 319, 325 (Tex. App.—Austin 1984, no writ); *see Boswell v. Brazos Elec. Power Co-op., Inc.*, 910 S.W.2d 593, 599-600 (Tex. App.—Fort Worth 1995, writ denied); *Armak Tex. Movers, Inc. v. Railroad Comm'n*, 797 S.W.2d 383, 388 (Tex. App.—Austin 1990, no writ); *Airport Coach Serv., Inc. v. City of Fort Worth*, 518 S.W.2d 566, 574 (Tex. Civ. App.—Tyler 1974, writ ref'd n.r.e.) (op. on reh'g). Because an administrative agency is a creature of the legislature, it possesses "only those powers that the Legislature expressly confers upon it" and "any implied powers that are reasonably necessary to carry out the express responsibilities given to it by the Legislature." *Public Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315 (Tex. 2001). An agency may not, however, "in the guise of implied powers, exercise what is effectively a new power, or a power contrary to a statute, on the theory that such exercise is expedient for the agency's purpose." *CenterPoint Energy Entex v. Railroad Comm'n*, 208 S.W.3d 608, 615 (Tex. App.—Austin 2006, pet. dism'd). Therefore, any questions regarding the scope of the agency's authority must be resolved in view of the statutory language conferring that authority, *see In re City of Georgetown*, 53 S.W.3d 328, 331 (Tex. 2001), which we review de novo, *see City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).

***The Effective Date Order Properly Interprets the CTC Order***

In the Effective Date Order, the Commission determined that its prior CTC Order, by "adopting the agreement of the parties in the NUS," established the effective date of TNMP's revised CTC interest rate as July 20, 2006. As evidence that this was in fact its prior determination, the Commission pointed to findings of fact 41 and 41A in the CTC Order, and made the following additional findings of fact:

7

8.  The non-unanimous settlement (NUS) adopted by the Commission in *Application of TNMP Power Company to Adjust the Competition Transition Charge Pursuant to PURA § 39.262(g)*, Docket No. 31994 (Nov. 2, 2006), states in Article II, paragraph D as follows: "Interest on the stranded cost balance beginning July 22, 2005 will be 10.93%. That interest rate will prevail unless and until the Commission validly adopts a new rule at which time the terms of the new rule will apply."

9.  In adopting the NUS, the Commission stated in its order [the CTC Order] that "[u]nder the terms of the NUS, the new version of the rule sets the interest rate on the stranded-cost balance *from the date the rule is effective*." Docket No. 31994, Order at 4 (Nov. 2, 2006). [Emphasis in original.]

10. Finding of fact 41 in the Commission's order in Docket No. 31994 states: "The NUS sets an interest rate of 10.93%, which is subject to change when the Commission validly adopts a new rule setting the interest rate."

11. Finding of fact 41A in the Commission's order in Docket No. 31994 states: "P.U.C. Subst. R. 25.263(l)(3) was revised, effective July 20, 2006, and establishes a formula for determining interest on post-true-up balances."

Based on these findings, the Commission concluded in the Effective Date Order that, "[p]ursuant to the non-unanimous settlement and the Commission's order adopting that settlement . . . , the effective date of a new interest rate on CTC balances revised pursuant to P.U.C. Subst. R. 25.263(*l*)(3) (effective July 20, 2006), is the effective date of that rule."

In its suit for judicial review of the Effective Date Order, TNMP challenged the Commission's conclusion that the CTC Order had adopted July 20, 2006 as the effective date for the new interest rate, characterizing it as an "egregious misconstruction of the NUS (and the 2006 CTC Order)." According to TNMP, the parties to the NUS agreed only that the "terms" of the new rule would apply when the Commission adopted a new rule. TNMP further asserts that because the CTC Order simply repeated the agreement of the parties to the NUS, the Effective Date Order "amounted

8

to an amendment of [the] 2006 CTC Order," allowing the Commission to confer itself the authority to set a "retroactive" effective date.

The Commission argues that the CTC Order represents the Commission's approval of the parties' NUS. We agree. Thus, in adopting the NUS, the Commission was entitled to, and did, interpret the effective-date language contained in the NUS and to formulate a reasonable remedy to effectuate the terms of that agreement. *See AEP Tex. North*, 297 S.W.3d at 447 (stipulation and agreement entered into by parties lost its character as private contract and assumed character of administrative order when it became basis for Commission's decision) (citing *In re Entergy Corp.*, 142 S.W.3d 316, 323-24 (Tex. 2004)); *see also Public Util. Comm'n v. Southwestern Bell Tel. Co.*, 960 S.W.2d 116, 119-20 (Tex. App.—Austin 1997, no pet.) (PURA confers on Commission power to accept and act upon agreement between parties, and power to interpret agreement when dispute subsequently arises). Therefore, our inquiry must concern not the language of the NUS itself, but the interpretation of the NUS that the Commission adopted and memorialized in the CTC Order (from which TNMP never appealed) and subsequently interpreted in the Effective Date Order. *See City of Abilene v. Public Util. Comm'n*, 146 S.W.3d 742, 747 & n.7 (Tex. App.—Austin 2004, no pet.) ("Agencies are entitled to interpret their own orders, for administrative purposes, so long as the agency does not use the occasion to interpret as a means to amend the prior order.") (citing *Home Transp. Co.*, 670 S.W.2d at 325); *see also Chocolate Bayou Water Co. & Sand Supply v. Texas Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied) (prohibiting collateral attack on final agency order after time for appeal has passed). And in construing the Effective Date Order, which in turn construes the CTC Order, we must give "great

9

weight" to the Commission's interpretation, just as we give great weight to an agency's interpretation of its own rules and regulations. *AEP Tex. North*, 297 S.W.3d at 447.

Accordingly, we conclude that at the time it issued the CTC Order, the Commission interpreted the NUS to require the interest rate to change "from the date the [new] rule is effective," and that such an interpretation was reasonable. The CTC Order's fact findings and ordering paragraphs are consistent with that conclusion, which is further bolstered by the language in the CTC Order (quoting the NUS) that "unless and until the Commission validly adopts a new rule," the former 10.93% rate would apply. As the Commission points out, the "unless-and-until language" can reasonably be construed to mean that the 10.93% rate "ceases to apply on the date the Revised Rule becomes effective. Thus, if the revised rate does not apply as of that date, there is no interest rate for stranded costs in the interim." *See* Tex. Gov't Code Ann. § 311.023(5) (West 2005) (courts may consider "consequences of a particular construction" when construing statutes); *AEP Tex. North*, 297 S.W.3d at 447 (courts construe orders of administrative agencies according to same rules as when interpreting statutes) (citing *Home Transp. Co.*, 670 S.W.2d at 325).

Read together, the relevant portions of the CTC Order, including the findings of fact, comport with the Commission's conclusion in the Effective Date Order that the Commission had intended the effective date of the revised rate to be July 20, 2006, and thus set the new interest rate as of that date. Therefore, because there is no inconsistency between the CTC and Effective Date Orders, the Commission did not improperly "amend" the prior order by its subsequent interpretation. *See City of Abilene*, 146 S.W.3d at 747 (recognizing that agency is entitled to interpret its own order,

10

so long as it does not use occasion as means to amend prior order).[5]  TNMP maintains, however, that the Commission's interpretation of its prior order is unreasonable and should not be adopted because it would result in retroactive ratemaking.  Specifically, TNMP argues that retroactive ratemaking occurred when the Commission recognized an effective date for the CTC revised interest rate that was earlier than the date on which the revised interest rate was numerically calculated.  We disagree.

***The Commission's Interpretation Does Not Result in Retroactive Ratemaking***

We note from the outset that "[t]he rule against retroactive ratemaking is often misunderstood and misapplied." *State v. Public Util. Comm'n*, 883 S.W.2d 190, 199 (Tex. 1994). The rule prohibits the Commission from setting future rates to allow a utility to recoup past losses or to refund to customers excess utility profits. *Id.*  "Restated, the rule prohibits a utility commission from making a retrospective inquiry to determine whether a prior rate was reasonable and imposing a surcharge when rates were too low or a refund when rates were too high." *Id.*  In short, "the rule against retroactive ratemaking only requires that [utilities], the Commission, and courts abide by an administrative determination that a particular rate is just and reasonable." *CenterPoint Energy Entex*, 208 S.W.3d at 623.

---

[5]  TNMP argues that we should consider the fact that it continued to collect interest at the 10.93% rate when it filed its compliance tariff in November 2006, after the CTC Order was issued, and apparently no other party objected.  The intent or interpretation of TNMP, or of the other participants in the CTC Docket, does not control our analysis, however.  Indeed, the most that could be inferred from TNMP's subsequent conduct and the alleged inaction on the part of the other parties is that the effective date language in the CTC Order was ambiguous.  Assuming without deciding that the CTC Order was ambiguous, we would be constrained to adopt the interpretation of the Commission so long as it was not unreasonable. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747-48 (Tex. 2006).  As we will address further, the Commission's interpretation is reasonable and does not, as TNMP asserts, result in impermissible retroactive ratemaking.

11

Here, the rate at issue was set by the 2006 CTC Order. Prior to that order, there were no CTC rates set for TNMP and TNMP was not authorized to charge a CTC.[6] Therefore, as the Commission argues, there could be no retrospective inquiry into the reasonableness of any CTC rates and, thus, no recoupment of past losses or refund of excess profits in those rates. *Cf. State*, 883 S.W.2d at 199. The change in the interest rate resulted from the prospective application of the formula adopted under the Commission's new rule, not from an evaluation of the adequacy, or inadequacy, of the stranded cost interest rate established for TNMP in its true-up case.[7] The Effective Date Order does not amount to a determination by the Commission that prior rates were unreasonable; rather, it merely implemented the CTC Order. Because the Commission did not engage in retroactive ratemaking in the CTC Docket, the Effective Date Order did not result in retroactive ratemaking.

Finally, TNMP argues that the Commission's order adopting amended rule 25.263(*l*)(3) prohibits the Commission from setting an effective date for the revised interest rate that is earlier than the date of an order determining what the rate would be. In that order, the

---

[6] This fact distinguishes the instant case from that of a "similarly situated" utility that TNMP argues was treated more favorably by the Commission. We also note that the effective-date language of the NUS adopted by the Commission in TNMP's CTC Order is unique to this case, and controls the outcome here. *See Application of AEP Texas Central Company For a Competition Transition Charge Pursuant to PUC Subst. R. 25.263(n)*, Docket No. 32758, available at http://interchange.puc.state.tx.us/WebApp/Interchange/application/dbapps/login/pgLogin.asp at Docket No. 32758, Item 189.

[7] Moreover, as the Commission and OPC point out, no statute or rule requires the CTC revised interest rate to have been numerically quantified before the effective date of the revised rate. On the contrary, the history of stranded-cost recovery illustrates that interest charges become effective long before the date principal stranded cost amounts or stranded cost interest rates are ever quantified.

Commission recognized that the CTC is a "rate" as defined under PURA, and that PURA authorizes the Commission to change rates on a prospective basis. Having determined, however, that the CTC Order revised TNMP's CTC interest rate prospectively from the effective date of the amended rule, we find no inconsistency between the order adopting the amended rule and the Effective Date Order's implementation of the CTC Order.

In light of the foregoing, we sustain the Commission's and OPC's issues on appeal.

## CONCLUSION

Having sustained the Commission's and OPC's issues on appeal, we reverse the judgment of the trial court and render judgment affirming the Commission's order.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Reversed and Rendered

Filed:  May 11, 2011

13