ACCEPTED
15-24-00075-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/21/2025 4:02 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-24-00075-CV

IN THE FIFTEENTH COURT OF APPEALS
DISTRICT OF TEXAS AT AUSTIN

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/21/2025 4:02:59 PM
CHRISTOPHER A. PRINE
Clerk

**SIGNAD, LTD.**,

**Appellant**,

**V.**

**TEXAS DEPARTMENT OF TRANSPORTATION**,
**Appellee.**

On Appeal from the 126th Judicial District Court of Travis County, Texas; Cause
No. D-1-GN-21-004113; the Honorable Aurora Martinez Jones, Presiding

**BRIEF OF APPELLEE**
**TEXAS DEPARTMENT OF TRANSPORTATION**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

NANETTE M. DINUNZIO
Chief, Transportation Division

JOSHUA LONGI
State Bar No. 24095228
joshua.longi@oag.texas.gov
Assistant Attorney General
Transportation Division
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 383-6280
Fax Number: (512) 936-0888

ATTORNEY FOR APPELLEE
TEXAS DEPARTMENT OF
TRANSPORTATION

**ORAL ARGUMENT REQUESTED**

**IDENTITY OF PARTIES AND COUNSEL**

1.      **The parties to the trial court's order were:**

SignAd, Ltd.                                        Plaintiff/Appellant
Texas Department of Transportation      Defendant/Appellee

2.      **Trial and appellate counsel for SignAd, Ltd., are:**

Richard L. Rothfelder                          Trial and Appellate Counsel
Christopher W. Rothfelder                   for SignAd, Ltd.
Rothfelder & Falick, L.L.P.
1517 Heights Blvd.
Houston, Texas 77008
Telephone: (713) 220-2288
rrothfelder@rothfelderfalick.com
crothfelder@rothfelderfalick.com

3.      **Trial and appellate counsel for the Texas Department of Transportation:**

Joshua Longi                                       Trial and Appellate Counsel
Assistant Attorney General                  for the Texas Department of
Transportation Division                       Transportation
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 383-6280
joshua.longi@oag.texas.gov


Susan Desmarais Bonnen                   Trial Counsel for the
Assistant Attorney General (Retired)   Texas Department of
                                                          Transportation

**TABLE OF CONTENTS**

                                                                                    **Page**

IDENTITY OF PARTIES AND COUNSEL ....................................................... ii

TABLE OF CONTENTS............................................................................ iii

INDEX OF AUTHORITIES....................................................................... vi

RECORD REFERENCES .......................................................................... xii

STATEMENT OF THE CASE.................................................................... xiii

STATEMENT REGARDING ORAL ARGUMENT ........................................... xiv

ISSUES PRESENTED................................................................................ xv

STATEMENT OF FACTS ............................................................................. 1

      A.     TxDOT regulates commercial signs........................................................ 1

      B.     SignAd owns a nonconforming commercial sign ................................. 3

      C.     TxDOT sought to acquire the Sign for a bridge expansion project ...... 6

      D.     TxDOT denies SignAd's amended permit application to change the Sign............................................................................................... 8

      E.     SignAd changes the Sign without an amended permit ......................... 8

      F.     The State condemns the Sign after SignAd fails to disclose it moved the Sign.................................................................................... 10

      G.     TxDOT issues a cancellation notice for SignAd's permit for making substantial changes to the Sign............................................. 12

      H.     The Commission cancels SignAd's permit after a contested case hearing ................................................................................... 14

      I.     The Commission's cancellation of SignAd's permit is upheld in a suit for judicial review .................................................................... 15

SUMMARY OF THE ARGUMENT ....................................................................16

ARGUMENT ..................................................................................................18

I.     The trial court did not commit error by applying substantial evidence review ......................................................................................................................18

      A.    Substantial evidence review applies because the Texas Highway Beautification Act does not define the scope of judicial review for the cancellation of a commercial sign permit ............................................19

      B.    The legal basis of the trial court's final judgment is its finding that the Commission's order was supported by substantial evidence..............22

      C.    SignAd's complaints of state agency deference lack merit under Texas law ....................................................................................................24

      D.    The trial court correctly declined to issue findings of fact and conclusions of law ..........................................................................26

II.    The trial court correctly affirmed the Commission's order canceling SignAd's commercial sign permit ....................................................................................29

      A.    The Commission properly canceled SignAd's permit because SignAd removed a support pole without an amended permit. ........................31

      B.    The Commission properly canceled SignAd's permit because SignAd moved the Sign structure without an amended permit.......................32

III.   SignAd waived its third and fourth issues presented because its motion for rehearing fails to preserve error..................................................................36

      A.    A motion for rehearing must identify errors with particularity to preserve error..................................................................................37

      B.    SignAd did not identify with particularity alleged errors regarding the settlement agreement and attorney's fees in its motion for rehearing .... ..............................................................................................40

IV.   The prior settlement agreement is not relevant to TxDOT's enforcement action in this case..............................................................................................42

A. The settlement agreement contains no language justifying SignAd's substantial changes to the Sign ................................................ 43

B. This case does not arise out of a dispute over the settlement agreement ...................................................................................... 44

C. The settlement agreement does not authorize attorney's fees for this case ............................................................................................. 45

D. TxDOT's sovereign immunity from suit is not waived by the settlement agreement ....................................................................... 45

PRAYER ................................................................................................... 48

CERTIFICATE OF COMPLIANCE ......................................................... 49

CERTIFICATE OF SERVICE .................................................................. 49

APPENDIX ............................................................................................... 50

# INDEX OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Ammonite Oil & Gas Corp. v. R. R. Comm'n of Tex.*,
    698 S.W.3d 198 (Tex. 2024) .......................................................................25

*BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*,
    93 S.W.3d 570 (Tex. App.—Austin 2002, pet. denied) ........................37, 39, 41

*Burke v. Cent. Educ. Agency*,
    725 S.W.2d 393 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ...............................
    ...................................................................... 37, 38, 39, 40, 41, 42

*Catalina Dev., Inc. v. Cnty. of El Paso*,
    121 S.W.3d 704 (Tex. 2003) .......................................................................46

*Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*,
    346 S.W.3d 37 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)...............16

*Cities of Dickinson, Friendswood, La Marque, League City, Lewisville and Texas City v. Pub. Util. Comm'n of Tex.*,
    284 S.W.3d 449 (Tex. App.—Austin 2009, no pet.)........................................25

*Clark v. Fort Worth Indep. Sch. Dist.*,
    No. 03-21-00275-CV, 2023 WL 376901 (Tex. App.—Austin 2023, no pet.)
    (mem. op.).................................................................................................23

*Dyer v. Tex. Comm'n on Env't Quality*,
    646 S.W.3d 498 (Tex. 2022) ..................................................................21, 22

*Everitt v. Emps. Ret. Sys. of Tex.*,
    No. 03-99-00400-CV, 2000 WL 263124 (Tex. App.—Austin 2000, no pet.) (not designated for publication) ..........................................................................42

*Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*,
    662 S.W.2d 953 (Tex. 1984) ..................................................................22, 23

*Froemming v. Tex. State Bd. of Dental Exam'rs*,
    380 S.W.3d 787 (Tex. App.—Austin 2012, no pet.)..................................19, 20

*Gen. Servs. Comm'n v. Little-Tex Insulation Co.*,
39 S.W.3d 591 (Tex. 2001)..................................................................46

*Hill v. Bd. of Trs. of the Ret. Sys. of Tex.*,
40 S.W.3d 676 (Tex. App.—Austin 2001, no pet.)..............................37

*KEM Tex., Ltd. v. Tex. Dep't of Transp.*,
No. 03-08-00468, 2009 WL 1811102 (Tex. App.—Austin 2009, no pet.)
(mem. op.)..........................................................................................8, 34

*Lamar Advantage Outdoor Co., L.P. v. Tex. Dep't of Transp.*,
No 14-20-00362-CV, 2022 WL 1498213 (Tex. App.—Houston [14th Dist.]
2022, no pet.) (mem. op.)......................................................................1, 2

*Leonard v. Tex. Med. Bd.*,
656 S.W.3d 456 (Tex. App.—El Paso 2022, pet. denied)...................40

*Lewis v. Metro. Sav. & Loan Ass'n*,
550 S.W.2d 11 (Tex. 1977).................................................................28

*Live Oak Resort v. Tex. Alcoholic Beverage Comm'n*,
920 S.W.2d 795 (Tex. App.—Houston [1st Dist.] 1996, no writ) ......42

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (June 28, 2024) ........................................................24, 25

*Mireles v. Tex. Dep't of Pub. Safety*,
993 S.W.2d 426 (Tex. App—San Antonio) *aff'd*, 9 S.W.3d 128 (Tex. 1999) (per
curiam) ..................................................................................................21

*Montgomery Indep. Sch. Dist. v. Davis*,
34 S.W.3d 559 (Tex. 2000)..................................................................23

*Nazari v. State*,
561 S.W.3d 495 (Tex. 2018) ..........................................................46, 47

*Nissan N. Am., Inc. v. Tex. Dep't of Motor Vehicles*,
592 S.W.3d 480 (Tex. App.—Texarkana 2019, no pet.)................28, 29

*North East Indep. Sch. Dist. v. Riou*,
598 S.W.3d 243 (Tex. 2020) ...............................................................20

*Pers. Care Prods., Inc. v. Smith*,
    578 S.W.3d 262 (Tex. App.—Austin 2019, no pet.)..............................21, 22, 27

*Reata Const. Corp. v. City of Dall.*,
    197 S.W.3d 371 (Tex. 2006) .......................................................................46

*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*,
    336 S.W.3d 619 (Tex. 2011) .......................................................................26

*R.R. Comm'n of Tex. v. Torch Operating Co.*,
    912 S.W.2d 790 (Tex. 1995) .......................................................................24

*Scally v. Tex. State Bd. of Med. Exam'rs*,
    351 S.W.3d 434 (Tex. App.—Austin 2011, pet. denied) ...................................25

*State v. Clear Channel Outdoor, Inc.*,
    463 S.W.3d 488 (Tex. 2015) .........................................................................6

*State v. Lueck*,
    290 S.W.3d 876 (Tex. 2009) .......................................................................45

*State v. SignAd Ltd.*,
    675 S.W.3d 19 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) ....................
    ......................................................................................10, 11, 12, 29, 35

*Suburban Util. Corp. v. Pub. Util. Comm'n of Tex.*,
    652 S.W.2d 358 (Tex. 1983) ..................................................................37, 42

*Tex. Alcoholic Beverage Comm'n v. Sierra*,
    784 S.W.2d 359 (Tex. 1990) (per curiam) .......................................................21

*Tex. Comm'n on Env't Quality v. Barua*,
    632 S.W.3d 726 (Tex. App.—El Paso 2021, pet denied)......................39, 40, 41

*Tex. Comm'n on Env't Quality v. Maverick Cnty.*,
    642 S.W.3d 537 (Tex. 2022) ..................................................................19, 20

*Tex. Dep't of Pub. Safety v. Alford*,
    209 S.W.3d 101 (Tex. 2000) (per curiam) .......................................................23

*Tex. Dep't of Pub. Safety v. Stanley,*
 982 S.W.2d 36 (Tex. App.—Houston [1st Dist.] 1998, no pet.)........................21

*Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.,*
 665 S.W.2d 446 (Tex. 1984) .....................................................................20, 22

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy,*
 74 S.W.3d 849 (Tex. 2002)...........................................................................46

*Tex. Water Comm'n v. Customers of Combined Water Sys., Inc.,*
 843 S.W.2d 678 (Tex. App.—Austin 1992, no writ) ........................................42

*TGS-NOPEC Geophysical Co. v. Combs,*
 340 S.W.3d 432 (Tex. 2011) ........................................................................26

*Walton v. Tex. Real Estate Comm'n,*
 No. 03-22-00757-CV, 2024 WL 4885833 (Tex. App.—Austin Nov. 26, 2024, no
 pet.) (mem. op.).........................................................................................23

*Wylie Indep. Sch. Dist. v. Cent. Educ. Agency,*
 488 S.W.2d 166 (Tex. App.—Austin 1972, writ ref'd n.r.e.) ............................27

**Constitutions, Statutes, and Rules**

23 U.S.C. § 131 (Highway Beautification Act of 1965) .......................................1, 2

43 Tex. Admin. Code § 21.141...............................................................................2, 10

43 Tex. Admin. Code § 21.142.....................................................................................3

43 Tex. Admin. Code § 21.153.....................................................................................3

43 Tex. Admin. Code § 21.154.....................................................................................3

43 Tex. Admin. Code § 21.168.....................................................................................5

43 Tex. Admin. Code § 21.170.....................................................................................3

43 Tex. Admin. Code § 21.177.....................................................................................4

43 Tex. Admin. Code § 21.198.....................................................................................7

43 Tex. Admin. Code § 21.199 ........................................................................7

Tex. Gov't Code § 311.034 ..........................................................................46

Tex. Gov't Code § 2001.146 ..........................................................15, 40, 41

Tex. Gov't Code § 2001.174 ..............................................15, 19, 20, 22, 23

Tex. R. App. P. 41.3 ......................................................................................16

Tex. R. App. P. 44.1 ......................................................................................28

Tex R. Civ. P. 296 ........................................................................................27

Tex. Transp. Code § 203.051 ........................................................................10

Tex. Transp. Code § 203.052 ........................................................................10

Tex. Transp. Code § 391.001 ..........................................................................2

Tex. Transp. Code § 391.002 ..................................................2, 3, 24, 25

Tex. Transp. Code § 391.003 ........................................................................47

Tex. Transp. Code § 391.034 ..........................................................................3

**Other**

43 Tex. Admin. Code § 21.150 (2018),
*repealed or amended by* 49 Tex. Reg. 6256 (2024) ...........................................30

43 Tex. Admin. Code § 21.174 (2018),
*repealed or amended by* 49 Tex. Reg. 6256 (2024) ...................................33, 34

43 Tex. Admin. Code § 21.176 (2018),
*repealed or amended by* 49 Tex. Reg. 6256 (2024) .........................30, 31, 32, 43

43 Tex. Admin. Code § 21.191 (2018),
*repealed or amended by* 49 Tex. Reg. 6256 (2024) ............................30, 32, 34

43 Tex. Admin. Code § 21.192 (2018),
   *repealed or amended by* 49 Tex. Reg. 6256 (2024) ...................30, 33, 34, 35, 36

Act of May 22, 2015, 84th Leg., R.S., ch. 625, § 9, 2015 Tex. Gen. Laws 2058 ...40

Frank Edward Cooper, *State Administrative Law* (1965).......................................28

Tex. Sup. Ct., *Transfer of Cases to Fifteenth Court of Appeals*,
   Misc. Docket No. 24-9055 (Aug. 26, 2024).......................................................16

U.S. Fed. Highway Admin., *How the Highway Beautification Act Became a Law*,
   https://www.fhwa.dot.gov/infrastructure/beauty.cfm (last visited January 16,
   2025) .................................................................................................................1

# RECORD REFERENCES

The appellate record includes a one-volume Clerk's Record and one Supplemental Clerk's Record. References to the Clerk's Record will be cited as "CR.[page number]." References to the Supplemental Clerk's Record will be cited as "SCR.[page number]."

The appellate record also includes a one-volume Reporter's Record. The Reporter's Record is a transcript of the hearing held on February 8, 2024, regarding Appellant's petition for judicial review. References to the Reporter's Record will be cited as "RR.[page number]."

Lastly, the appellate record includes a one-volume Administrative Record of the proceedings before the State Office of Administrative Hearings. References to the Administrative Record will be cited as "AR.[page number]."

# STATEMENT OF THE CASE

*Nature of the Case:* This case involves the appeal of an administrative order issued by the Texas Transportation Commission (Commission) after a contested case hearing at the State Office of Administrative Hearings. CR.10, 21. Appellee, the Texas Department of Transportation (TxDOT) sought to cancel a commercial sign permit held by Appellant, SignAd, Ltd. (SignAd). AR.2585–87.

*Course of Proceedings:* The administrative law judge issued a proposal for decision concluding a commercial sign permit should be canceled because SignAd substantially changed its commercial sign without first obtaining an amended permit from TxDOT. AR.2458–74. The Commission then issued an order canceling the permit and adopting the proposal for decision. CR.21–25. SignAd petitioned for review in Travis County District Court. CR.3. The trial court ordered briefing and held a hearing on the merits. CR.32.

*Trial Court:* 126th Judicial District Court, Travis County, the Honorable Aurora Martinez Jones, Presiding.

*Trial Court Disposition:* After a hearing, the trial court concluded the Commission's order was supported by substantial evidence, and entered a final judgment affirming its cancellation of SignAd's commercial sign permit. SCR.3.

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist the Court. The threshold issue is whether SignAd's actions necessitated the cancellation of its commercial sign permit. SignAd raises a number of arguments that deflect away from that issue. Oral argument will eliminate the extraneous disputes, thus aiding the Court in its decisional process.

# ISSUES PRESENTED

I.      Whether the trial court correctly applied substantial evidence review because the Texas Highway Beautification Act does not define the scope of judicial review.

II.     Whether substantial evidence supported the Commission's order canceling SignAd's commercial sign permit because SignAd violated TxDOT's rules disallowing substantial changes to a commercial sign.

III.    Whether SignAd's footnote incorporating by reference prior pleadings satisfied the particularity standard to preserve error for its third and fourth issues presented.

IV.     Whether a prior settlement agreement from a separate enforcement action justifies SignAd's disregard for TxDOT's rules and SignAd's request for attorney's fees.

**TO THE HONORABLE FIFTEENTH COURT OF APPEALS:**

SignAd, Ltd. (SignAd) illegally made substantial changes to its commercial sign in violation of state laws and regulations. Specifically, it reduced the number of support poles from five to four and physically moved a commercial sign structure without first obtaining an amended sign permit from the Texas Department of Transportation (TxDOT). In response, TxDOT initiated this enforcement action to cancel the commercial sign permit belonging to the changed sign. After a contested case hearing, the Texas Transportation Commission (Commission) adopted the administrative law judge's findings and conclusions and ordered the cancellation of SignAd's permit. SignAd petitioned for judicial review and the trial court issued a final judgment affirming the Commission's order. The trial court's judgment should be affirmed because SignAd's actions form the reasonable basis for the Commission's cancellation of SignAd's commercial sign permit.

## STATEMENT OF FACTS

### A. TxDOT regulates commercial signs.

The Federal Highway Beautification Act, championed by Lady Bird Johnson, became law in 1965. *See* Highway Beautification Act of 1965, 23 U.S.C. § 131; *see also* U.S. Fed. Highway Admin., *How the Highway Beautification Act Became a Law*, https://www.fhwa.dot.gov/infrastructure/beauty.cfm (last visited January 16, 2025); *Lamar Advantage Outdoor Co., L.P. v. Tex. Dep't of Transp.*, No. 14-20-

1

00362-CV, 2022 WL 1498213, at *1 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (mem. op.). The federal act requires states to effectively control the erection and maintenance of outdoor advertising signs within 660 feet of interstate and primary highways, and beyond 660 feet in non-urban areas if the signs are designed to be and are visible from such highways. 23 U.S.C. § 131(a), (c). If a state fails to make provisions to effectively control such signs, it risks losing ten percent of its federal highway funds. *Id*. § 131(b).

TxDOT is charged with regulating "the orderly and effective display of commercial signs" within the State.[1] 43 Tex. Admin. Code § 21.141. Texas has its own version of the Federal Highway Beautification Act, which is known as the Texas Highway Beautification Act, codified in chapter 391 of the Transportation Code. *See* Tex. Transp. Code § 391.002 ("[I]t is the intent of the legislature to comply with the Highway Beautification Act of 1965 (23 U.S.C. Section 131, 136, 319) to the extent that it is implemented by the United States Congress."). Under the

---

[1] A "commercial sign" is defined as a sign that is:

> (A) intended to be leased, or for which payment of any type is intended to be or is received, for the display of any good, service, brand, slogan, message, product, or company, except that the term does not include a sign that is leased to a business entity and located on the same property on which the business is located; or

> (B) located on property owned or leased for the primary purpose of displaying a sign.

Tex. Transp. Code § 391.001. Colloquially, commercial signs are called billboards.

Texas act, commercial sign owners must be licensed to operate by TxDOT and are required to secure a permit for every commercial sign they erect and operate. *See* Tex. Transp. Code § 391.068(a); 43 Tex. Admin. Code §§ 21.153, .154, .170.

TxDOT's permitting process ensures that all commercial signs adhere to standards of "health, safety, welfare, morals, convenience, and enjoyment of the traveling public, and protect the public investment" of the Texas highway system. Tex. Transp. Code § 391.002(b). Commercial signs in noncompliance with the Texas Highway Beautification Act are public nuisances. *Id.* § 391.034(a)(2).

**B.  SignAd owns a nonconforming commercial sign.**

SignAd owns a nonconforming commercial sign in Sealy, Texas (the Sign). The Sign is nonconforming because it was erected prior to March 3, 1986, in a location that is now prohibited by TxDOT standards and regulations.[2] The Sign has been permitted by TxDOT under permit 80248 (or record identification number PMT-HBA-13236) since at least 1996. AR.2537–41.

The Sign sits immediately adjacent to an IH 10 overpass bridge which spans the Burlington North Santa Fe railroad. AR.2537–41. It is located in the railroad

---

[2] A nonconforming sign is "[a] sign that was lawfully erected but that no longer complies with a law or rule because of changed conditions or because the law or rule was amended after the sign was erected or that fails to comply with a law enacted or rule adopted after the sign was erected." 43 Tex. Admin. Code § 21.142(19).

right of way, which runs perpendicular to the State's bridge. AR.2671. Prior to this dispute, the Sign was supported by five poles. *Id.*



*Id.* (Photo of the Sign in March 2017).

Had the Sign been erected after March 3, 1986, TxDOT would have required it to be located 183 feet south of the IH 10 bridge outside an area called the projected right of way. *See* 43 Tex. Admin. Code § 21.177(b). The projected right of way of a public roadway is an "area that would be within the right of way if the right of way boundary lines were projected across an area right of way, utility right of way, or road right of way that is not owned by the state or a political subdivision." *Id.* Instead,

the Sign was located approximately eight feet from the bridge. AR.2524, 2543–44, 2939. The Sign's location within the projected right of way gives it its nonconforming status. *See* 43 Tex. Admin. Code § 21.168(a).



AR.2659 (the red circle denotes the Sign's location inside the projected right of way).

In 2011, the Sign's nonconforming status was memorialized in a settlement agreement between TxDOT and SignAd from a separate enforcement proceeding. AR.2676–83. That proceeding was initiated in response to a complaint regarding the

5

Sign's location within the projected right of way. CR.5. TxDOT later settled its enforcement action against SignAd because the Sign met legal nonconformity requirements under the Texas Administrative Code. AR.2667. The terms of the prior settlement agreement reinstated SignAd's permit to operate the sign, dictated the measurements of the Sign's face, and dismissed the enforcement action at the State Office of Administrative Hearings. *Id*. The settlement agreement also contained an attorney's fees clause for "any proceeding arising out of any disagreement between the Parties resulting from any provisions" of the settlement agreement. AR.2679.

C.     **TxDOT sought to acquire the Sign for a bridge expansion project.**

In 2017, TxDOT notified SignAd of its intention to expand the highway overpass bridge next to the Sign. AR.2684–91. The bridge expansion was part of a general improvement project for IH 10 between San Antonio and Houston. AR.2671–72, 2935. TxDOT determined the expanded bridge would bisect the Sign by approximately two feet. AR.2935–36.

On September 8, 2017, TxDOT sent a letter to SignAd stating its intent to acquire the Sign in order to expand the overpass bridge. AR.2684–86. The letter offered SignAd $106,100 for the Sign based on an appraisal determining the fair market value of the Sign structure.[3] *Id*. TxDOT also offered to provide SignAd with

---

[3] Billboard structures such as the Sign are fixtures and are treated as real property when faced with acquisition. *State v. Clear Channel Outdoor, Inc.*, 463 S.W.3d 488, 495–96 (Tex. 2015). Hence, the offer to purchase the Sign. AR.2684.

a relocation permit under limited conditions. *Id*. A relocation permit replaces a commercial sign permit that is lost because of the acquisition of right of way for a highway construction project. *See* 43 Tex. Admin. Code § 21.199. Relocation permits allow sign owners to place a new sign in a new location with relaxed permitting standards. *See id.* § 21.198.

On February 7, 2018, SignAd rejected TxDOT's offer to purchase the Sign structure. AR.2697–700. SignAd countered with a request that it be issued an amended permit allowing it "to adjust the Sign outside of the State's proposed right of way and five-foot setback zone." AR.2697. SignAd also requested payment of $53,214, an amount it represented as "the cost to perform the necessary work to remove the encroachment into the State's right of way and setback." AR.2700.

In its letter, SignAd indicated it had obtained a building permit from the City of Sealy to move the Sign. AR.2697. Specifically, the building permit purportedly allowed SignAd to move the Sign's faces so they would not overhang the newly expanded bridge. *Id*. As part of its building permit application to the City of Sealy, SignAd disclosed a construction quote to move the Sign approximately seven feet. AR.2639. The construction quote was for $26,250, and included the cost of all labor, equipment, and materials. *Id*. The building permit was valid for six months and expired on July 23, 2018. AR.2693.

**D. TxDOT denies SignAd's amended permit application to change the Sign.**

On March 29, 2018, SignAd submitted an amended permit application to TxDOT, requesting permission to move the Sign's faces. AR.2711–15, 2974–75. In its permit application, SignAd stated it would not change the number of support poles. AR.2711–15.

On May 15, 2018, TxDOT denied SignAd's amended permit application. AR.2525–26. SignAd appealed the denial to TxDOT's executive director. AR.2547–79. On July 25, 2018, TxDOT's executive director affirmed the denial of SignAd's amended permit application. AR.2583. He explained an amended permit will not be issued for a substantial change to a nonconforming sign. AR.2582–84. The executive director's decision was final and not subject to judicial review. *See KEM Tex., Ltd. v. Tex. Dep't of Transp.*, No. 03-08-00468-CV, 2009 WL 1811102, at *5 (Tex. App.—Austin 2009, no pet.) (mem. op.).

**E. SignAd changes the Sign without an amended permit.**

In August 2018, SignAd moved the Sign and reconstructed it with only four support poles. AR.2662, 2665, 2983–85. SignAd performed this construction work despite not having an amended permit to do so from TxDOT, and with an expired building permit from the City of Sealy. AR.2583, 2693, 2983. SignAd's work to move and reconstruct the Sign with four poles instead of five was completed on August 21, 2018. AR.2662–68, 2984.





70951  8·21·18

70951
REDMAN

WE FIND HOMES
THAT FIT YOU

EXHIBIT

9

AR.2662, 2665 (photographs showing the Sign during reconstruction and upon completion).

SignAd's president and chief executive officer, Wes Gilbreath, subsequently testified at the contested case hearing that he made the calculated decision to move the Sign. AR.2983. SignAd's purpose in moving the Sign was to cause TxDOT to initiate an enforcement action over its failure to obtain an amended permit before changing the Sign. AR.2982. According to Gilbreath, this would allow SignAd to have its day in court as to whether TxDOT should have denied its amended permit application. *Id*.

F.     **The State condemns the Sign after SignAd fails to disclose it moved the Sign.**

In October 2018, the State filed suit to condemn the Sign. *See State v. SignAd Ltd.*, 675 S.W.3d 19, 22 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).[4] The State and SignAd attended a special commissioners' hearing in December where the parties argued over the value of the Sign. *Id.* at 23; *see also* Tex. Prop. Code § 21.014(a) (In a condemnation suit, special commissioners "assess the damages of the owner of the property being condemned."). At the hearing, SignAd did not disclose it had moved the Sign. *See SignAd Ltd.*, 675 S.W.3d at 30–31. The special

---

[4] "The State" and "TxDOT" are not interchangeable terms. The State was the party to the condemnation suit because the Commission may exercise eminent domain in the name of the State to widen a highway. *See* Tex. Transp. Code §§ 203.051–.052. TxDOT is the party responsible for enforcing regulations affecting the Sign. *See* 43 Tex. Admin. Code § 21.141.

commissioners awarded $118,000 in compensation for the Sign. *Id.* at 23. SignAd objected to the award of the special commissioners. *Id*.

SignAd later filed an application for a temporary injunction to bar TxDOT from removing the Sign. *Id*. At a February 2019 injunction hearing, SignAd affirmatively disclosed it had moved the Sign during testimony. *Id.* at 23, 29, 31. SignAd's executive vice president, Daniel J. Creel, testified SignAd moved the Sign out of the State's right of way before the State filed its condemnation suit. *Id*. at 31. This testimony confirmed TxDOT's suspicion that SignAd had changed the Sign. *Id*. Weeks before the injunction hearing, TxDOT project manager Greg Polasek and commercial sign regulatory program director Wendy Knox ordered the inspection of the Sign. *Id*. TxDOT sign inspector Ross Sherrod concluded in January 2019 that SignAd changed the number of support poles and moved the Sign. *Id*. Because the Sign would no longer be bisected by the overpass expansion, the State agreed to the entry of a temporary injunction prohibiting removal of the Sign. *Id*. at 23.

The State later dismissed the condemnation suit because the need to acquire the Sign had ceased due to SignAd's actions. *Id*. at 28–29. The trial court held a bench trial to decide whether SignAd was entitled to attorney's fees and expenses from the State's voluntary dismissal. *Id*. at 32. The trial court awarded SignAd $171,509.57 in attorney's fees and $48,304.06 in expenses. *Id*. The State appealed.

The First Court of Appeals reversed and rendered judgment that SignAd take nothing for its claim of attorney's fees and expenses. *Id*. at 22. The Court held that none of the costs incurred by SignAd were reasonable because "SignAd caused its own fees by failing to promptly disclose that, in response to the State's notice of taking and denial of permission to move the billboard [Sign] out of the State's planned right of way, SignAd had nonetheless moved the billboard [Sign] thereby defeating the possibility of condemnation for public use before the State filed its condemnation suit." *Id*. at 31. The Texas Supreme Court denied SignAd's petition for review.

### G. TxDOT issues a cancellation notice for SignAd's permit for making substantial changes to the Sign.

On March 1, 2019, TxDOT issued a notice of cancellation for SignAd's permit. AR.2585–87. TxDOT initially asserted SignAd reduced the number of the Sign's poles from six to five, and that the Sign's face was larger. AR.2585. Later, TxDOT issued an amended notice of cancellation. AR.2531–32. The amended notice clarifies SignAd substantially changed the Sign without first securing a permit. *Id*. TxDOT alleged SignAd changed the Sign's face, reduced the number of support poles from five to four, and moved the Sign. *Id*.

TxDOT derived its evidence from a field inspection performed by sign inspector Ross Sherrod. AR.2527–30. Sherrod found the Sign structure was now approximately 155 feet inside of the projected right of way instead of the prior 170

12

feet. AR.2529. As a result, the northern edge of the Sign structure was approximately 21.5 feet away from the edge of the overpass bridge rather than the previous 8 feet. *Id*. Sherrod found the Sign "could pose some safety concerns and may also be a distraction for drivers." *Id*. He found the Sign "may also cause some hazards when maintenance needs to be done to either the sign or the roadway." *Id*.

Sherrod also photographed the Sign during his inspection. AR.2530. He annotated changes to the Sign's location in relation to the overpass bridge and the reduction of support poles.



*Id*. (Photo and notations from the January 30, 2019, field inspection).

**H. The Commission cancels SignAd's permit after a contested case hearing.**

On March 14, 2019, SignAd requested a contested case hearing in response to TxDOT's notice of cancellation. AR.42. In response, TxDOT filed an original petition before the State Office of Administrative Hearings to enforce the cancellations of other commercial sign permits against SignAd. AR.20–43. TxDOT later amended its petition to include the permit cancellation of the Sign in this case. AR.51–90. A contested case hearing on the merits was held before an administrative law judge on November 17, 2020. AR.2855–3015.

At the contested case hearing, TxDOT presented the testimony of Wendy Knox, its commercial sign regulatory program director. AR.2890. In response, SignAd presented the testimony of Wes Gilbreath, its president and chief executive officer. AR.2954–55.

On March 15, 2021, the administrative law judge issued a proposal for decision. AR.2458–74. The judge found that "SignAd made two substantial changes to the Sealy Sign without obtaining an amended permit from TxDOT: removing a pole and moving the Sign." AR.2473. As a result, the judge determined "TxDOT should cancel PMT-HBA-13236 for the Sealy Sign." AR.2474. SignAd filed exceptions to the proposal for decision, AR.2477–86, which the administrative law judge rejected. AR.2496–97. TxDOT agreed with the proposal for decision. AR.2475–76.

On May 27, 2021, the Commission issued an order canceling SignAd's permit. AR.2503. The order adopts the administrative law judge's findings of fact and conclusions of law. AR.2504–07. SignAd filed a motion for rehearing, AR.2508–19, which was overruled as a matter of law on July 21, 2021. *See* Tex. Gov't Code § 2001.146(c).

## I.    The Commission's cancellation of SignAd's permit is upheld in a suit for judicial review.

On August 19, 2021, SignAd filed a petition for judicial review in Travis County District Court. CR.3–18. SignAd pleaded the administrative findings, conclusions, or decisions were not supported by substantial evidence. CR.4; *see also* Tex. Gov't Code § 2001.174(2). SignAd requested substantial evidence review of the Commission's order canceling the permit. CR.10.

The trial court ordered briefing and scheduled a hearing. CR.32. The hearing was held on February 8, 2024, after briefing was completed. RR.1. The evidence at the hearing was restricted to the administrative record. RR.3, 5. The court took the arguments of counsel under advisement. RR.54.

On April 27, 2024, the trial court entered a final judgment affirming the Commission's order canceling SignAd's permit. SCR.3. The court held the order is supported by substantial evidence. *Id*. The court also denied SignAd's request for attorney's fees. *Id*.

In response to the final judgment, SignAd requested findings of fact and conclusions of law from the trial court. CR.223–24. TxDOT opposed SignAd's request, arguing there were no facts to be found by the trial court because substantial evidence review requires the state agency to be the fact finder, and the only conclusion of law to be found was whether substantial evidence supported the Commission's order. CR.226–27. The trial court did not issue findings of fact and conclusions of law. SignAd appealed.[5] CR.251.

## SUMMARY OF THE ARGUMENT

The trial court correctly performed a substantial evidence review. The Administrative Procedure Act requires substantial evidence review in cases where the enabling statute does not define the scope of judicial review. Because the Texas Highway Beautification Act is silent as to the scope of judicial review for the cancellation of a commercial sign permit, substantial evidence review was the appropriate standard for the trial court to apply. SignAd, despite requesting substantial evidence review to the trial court—now challenges the very type of review it sought.

---

[5] On August 26, 2024, the Texas Supreme Court transferred this case from the Third Court of Appeals to this Court. *See* Tex. Sup. Ct., *Transfer of Cases to Fifteenth Court of Appeals*, Misc. Docket No. 24-9055 (Aug. 26, 2024). Pursuant to Texas Rule of Appellate Procedure 41.3, this Court must decide the case in accordance with precedent of the Third Court of Appeals if this Court's decision would be otherwise inconsistent with the Third Court's precedent. *See* Tex. R. App. P. 41.3; *Chevron Phillips Chem. Co. LP v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 42 n.1 (Tex. App.—Houston [14th Dist.] 2011, pet. denied.).

16

No error can be assigned to the judgment in this case. The trial court correctly resolved whether the Commission's order was supported by substantial evidence. This was a question of law and forms the legal basis for the judgment. Relatedly, the trial court properly refrained from issuing findings of fact and conclusions of law because the sole issue before it was this question of law.

Proceeding to the merits, this Court should recognize that TxDOT's rules do not allow commercial sign owners to act first and ask forgiveness later. Yet that is precisely what SignAd did by making substantial changes to the Sign without TxDOT's approval. Those substantial changes came in the form of SignAd's removal of a support pole and movement of the Sign structure without first obtaining an amended permit. In fact, TxDOT expressly denied SignAd's amended permit application requesting permission to change the Sign. SignAd knew it had no right to appeal TxDOT's denial of its amended permit, so it changed the Sign anyway. As a result, the Commission had no choice but to cancel SignAd's permit.

SignAd also failed to preserve error for its claim that a prior settlement agreement precludes cancellation of its permit and bestows attorney's fees. SignAd's motion for rehearing to the Commission does not meet the particularity standard required to preserve error. Absent from the motion is any mention of the prior settlement agreement, or a claim for attorney's fees under that agreement. Therefore, this Court should find that SignAd waived those issues.

But if not, SignAd cannot tie the prior settlement agreement to the reasons why the Commission canceled the permit in this case. And attorney's fees under that agreement are inapplicable because this dispute does not arise out of a disagreement over the settlement agreement's terms. Furthermore, TxDOT retains its sovereign immunity from suit for attorney's fees.

SignAd's premeditated steps to flout TxDOT's rules and regulations by substantially changing its nonconforming Sign are at the core of this dispute. SignAd should bear the consequences of its actions. This Court should affirm the trial court's judgment upholding the permit cancellation.

## ARGUMENT

### I. The trial court did not commit error by applying substantial evidence review.

SignAd makes a variety of complaints to argue the trial court should not have examined the Commission's order using substantial evidence review. These arguments can be reduced to: (1) the trial court should have applied the de novo standard of review, (2) the trial court did not provide a legal basis for its final judgment affirming the Commission's order, (3) deference to a state agency's interpretation of its own administrative rules should no longer exist in Texas, and (4) the trial court committed reversible error by not issuing findings of fact and conclusions of law. SignAd Br. 12–17. These are simply attempts to create error where none exists and should be rejected.

**A.** **Substantial evidence review applies because the Texas Highway Beautification Act does not define the scope of judicial review for the cancellation of a commercial sign permit.**

SignAd requested substantial evidence review at the trial court, but now argues the de novo standard should have applied. SignAd Br. 13. Substantial evidence review applies when "the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review." Tex. Gov't Code § 2001.174. SignAd acknowledged in its petition for judicial review the enabling statute is silent as to which type of review applies in this case:

> The Highway Beautification Act does not define the scope of judicial review of the cancellation of a commercial sign permit. Thus, the scope of review of the Commission's order is described in Tex. Gov't Code § 2001.174.

CR.10. On this basis alone, this Court should reject SignAd's argument that the de novo standard should have applied. Additionally, SignAd does not reference any statute that would have entitled it to the de novo standard. Therefore, review of the Commission's order canceling SignAd's permit using substantial evidence review is appropriate.

Applying substantial evidence review, this Court must presume the Commission's order is supported by substantial evidence; and SignAd, as the party appealing the order, has the burden to prove otherwise. *See Tex. Comm'n on Env't Quality v. Maverick Cnty.*, 642 S.W.3d 537, 547 (Tex. 2022); *Froemming v. Tex.*

*State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 791 (Tex. App.—Austin 2012, no pet.) (citing *Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). Under this standard, "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." Tex. Gov't Code § 2001.174. For this reason, substantial evidence review is "highly deferential" to a state agency's decision. *North East Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020).

Substantial evidence review presents two options to a court reviewing a state agency decision. The court "may affirm the agency decision in whole or in part," and "shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced." Tex. Gov't Code § 2001.174(1), (2). Reversal or remand is only available if the state agency's findings, inferences, conclusions, or decisions are:

> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law;
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* "Each of these grounds for reversal presents a question of law." *Tex. Dep't of Pub. Safety v. Stanley*, 982 S.W.2d 36, 37 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

This Court is tasked with determining whether the Commission's order is supported by substantial evidence. The test for substantial evidence "is whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Tex. Alcoholic Beverage Comm'n v. Sierra*, 784 S.W.2d 359, 360 (Tex. 1990) (per curiam) (internal quotation marks omitted). "Substantial evidence requires only more than a scintilla, and the evidence on the record may actually preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Mireles v. Tex. Dep't of Pub. Safety*, 993 S.W.2d 426, 428 (Tex. App.—San Antonio 1999) *aff'd*, 9 S.W.3d 128 (Tex. 1999) (per curiam); *see also Pers. Care Prods., Inc. v. Smith*, 578 S.W.3d 262, 266 (Tex. App.—Austin 2019, no pet.).

Lastly, even if this Court finds that one or more of the findings or conclusions in the Commission's order is improper, it must still affirm the order if any of the remaining findings and conclusions support the order. *See Dyer v. Tex. Comm'n on Env't Quality*, 646 S.W.3d 498, 514 (Tex. 2022) ("If an agency's decision is based on sufficient underlying findings that are supported by substantial evidence, then

unnecessary findings cannot render that decision reversible, even if those findings are improper.") (citing *Charter Med-Dall.*, 665 S.W.2d at 453).

> **B.     The legal basis of the trial court's final judgment is its finding that the Commission's order was supported by substantial evidence.**

SignAd argues the trial court's final judgment "did not provide a legal basis for the denial" of its petition for judicial review. SignAd. Br. 24. A plain reading of the final judgment disproves this claim. The judgment states:

> Having considered the pleadings, the documents on file in this case, admitted exhibits, the administrative record, and the argument of counsel, the Court concludes that the Texas Transportation Commission's Order is supported by substantial evidence and is AFFIRMED. All relief requested by Plaintiff, including Plaintiff's request for attorney fees, is DENIED.

SCR.3.

Here, SignAd feigns error by arguing it was forced to guess the reasons why the trial court rendered judgment. SignAd Br. 14–15. This excuse fails to recognize the obvious: SignAd failed to show a basis for at least one of the legal contentions listed in § 2001.174(2). Thus, the trial court's judgment resolved a question of law— whether there is substantial evidence to support the Commission's order. S*ee Pers. Care Prods.*, 578 S.W.3d at 267. This is the root of the trial court's judgment that SignAd willfully ignores.

SignAd also disregards a body of case law holding the only question of law to be resolved in a judicial appeal of a contested case is whether there is substantial

evidence to support the administrative decision. *See e.g., Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984) ("On one hand, the court must hear and consider evidence to determine whether reasonable support for the administrative order exists. On the other hand, the agency itself is the primary fact-finding body, and the question to be determined by the trial court is strictly one of law."); *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2000) (per curiam) ("whether there is substantial evidence to support an administrative decision is a question of law."); *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000) ("The question whether an agency's determination meets [the substantial evidence] standard is one of law."); *see also Clark v. Fort Worth Indep. Sch. Dist.*, No. 03-21-00275-CV, 2023 WL 376901, at *6 (Tex. App.—Austin 2023, no pet.) (mem. op.); *Walton v. Tex. Real Estate Comm'n*, No. 03-22-00757-CV, 2024 WL 4885833, at *2 (Tex. App.—Austin Nov. 26, 2024, no pet.) (mem. op.) ("Whether the Commission's order satisfies the substantial-evidence standard is a question of law.").

In essence, SignAd's suit for judicial review can be traced to its assertion that its rights have been prejudiced because it alleged a violation of one of the six legal requirements in § 2001.174(2) of the Texas Government Code. CR.4. This specific complaint was a question of law to be decided by the trial court. And the issue of whether there was substantial evidence to support the Commission's order canceling

SignAd's permit was the sole issue to be decided. As a result, there is no guessing why the trial court affirmed the order. It found the substantial evidence standard was met, and therefore, the order should be affirmed. SCR.3. This is not error; it is the framework followed by all Texas litigants when appealing a contested case within the Administrative Procedure Act.

**C.      SignAd's complaints of state agency deference lack merit under Texas law.**

SignAd proceeds to complain that state agencies, like TxDOT, should not be afforded any deference to interpret their own administrative rules. SignAd Br. 15. To argue this point, it cites to the United States Supreme Court decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (June 28, 2024). SignAd. Br. 15–16. This argument fails for three reasons.

First, no Texas court has extended *Loper* to state rules and regulations because it applies only to the federal Administrative Procedure Act. *See Loper*, 603 U.S. at 369. SignAd omits this telling point because Texas courts have a history of affording state agencies deference to interpret their own rules. *See R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995) (holding the substantial evidence standard of review "gives significant deference to the agency in its field of expertise."). In this case, TxDOT should be afforded significant deference in the area of commercial sign regulation because that is within its field of expertise. *See* Tex. Transp. Code § 391.002(b) (stating TxDOT regulates the erection and

24

maintenance of commercial signs). SignAd would have this Court abandon decades of Texas case law for the *Loper* decision which has not been applied to Texas.

Second, *Loper* disposed of a principle of federal statutory construction known as the *Chevron* doctrine, which afforded deference to federal agencies in interpreting *ambiguous* statutes.[6] But there is no ambiguity to the TxDOT rules that SignAd violated in this case. In fact, SignAd argues the opposite of ambiguity, claiming it was entitled to move the Sign "based on the unambiguous provisions of the Parties' Settlement Agreement and TxDOT's regulations." SignAd Br. 10–11.

And third, Texas law is not consistent with *Loper* as SignAd claims. For example, SignAd's citation to *Scally v. Texas State Board of Medical Examiners*, 351 S.W.3d 434 (Tex. App.—Austin 2011, pet. denied), is misguided. *See* SignAd Br. 16. In *Scally*, the Third Court properly articulated the rule: "[w]hen we construe administrative rules, an administrative agency's interpretation of its own rules is entitled to great weight and deference; it controls unless plainly erroneous or consistent with the agency's enabling statute." *Id*. at 458 (citing *Cities of Dickinson, Friendswood, La Marque, League City, Lewisville and Texas City v. Pub. Util. Comm'n of Tex.*, 284 S.W.3d 449, 452 (Tex. App.—Austin 2009, no pet.)) (internal

---

[6] The United States Supreme Court also acknowledged it "has not deferred to any agency interpretation under *Chevron* since 2016." *Loper*, 603 U.S. at 406. This is a far cry from Texas, where just last year the Texas Supreme Court recognized the substantial evidence standard "gives significant deference to the agency in its field of expertise." *See Ammonite Oil & Gas Corp. v. R. R. Comm'n of Tex.*, 698 S.W.3d 198, 207 (Tex. 2024).

quotation marks omitted). The courts in SignAd's other cited cases also held the interpretation of administrative rules are entitled to agency deference. *See e.g., R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 621 (Tex. 2011) ("we hold the court of appeals erred in not deferring to the [Railroad] Commission's interpretation."); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) ("We defer only to the extent that an agency's interpretation is reasonable, and no deference is due when an agency's interpretation fails to follow the clear, unambiguous language of its own regulations.").

Again, SignAd's argument is that no deference to TxDOT's interpretation of its rules should apply. That is not the law; and decades of precedent should not be tossed away in light of a United States Supreme Court decision that has no application to Texas state administrative procedure. This is nothing more than an attempt to fabricate error where none exists.

### D. The trial court correctly declined to issue findings of fact and conclusions of law.

Lastly, SignAd is quick to claim error because the trial court declined to issue findings of fact and conclusions of law. SignAd Br. 14–15. Such findings and conclusions serve no purpose in an administrative appeal of a contested case. This is because the Commission is the factfinder, and the trial court determines the sole issue of whether substantial evidence reasonably supported the Commission's order.

Because the trial court decided this question of law, findings of fact and conclusions of law would have been inappropriate.

There is longstanding precedent holding when only questions of law are presented, the trial court should refuse to make findings of fact and conclusions of law. *See Pers. Care Prods.*, 578 S.W.3d at 267; *Wylie Indep. Sch. Dist. v. Cent. Educ. Agency*, 488 S.W.2d 166, 168 (Tex. App.—Austin 1972, writ ref'd n.r.e.). In *Personal Care Products, Inc. v. Smith*, the Third Court of Appeals addressed a similar complaint when a party claimed reversible error after the trial court declined to issue findings of fact and conclusions of law. 578 S.W.3d at 267. Like SignAd in this case, Personal Care Products asserted that Texas Rule of Civil Procedure 296 required the trial court to issue findings of fact and conclusions of law. *Compare* CR.223, *with Pers. Care Prods.*, 578 S.W.3d at 267. Rule 296 allows a requesting party to obtain written findings of fact and conclusions of law in any case tried in the district or county court without a jury. *See* Tex. R. Civ. P. 296.

The Third Court found the trial court did not commit error. *Pers. Care Prods.*, 578 S.W.3d at 267. The court's analysis was two-fold. First, it observed "[t]he administrative agency is the fact-finding body and the question to be determined by the district court on appeal is one of law." *Id*. And second, when "only questions of law were presented to the court, the trial court was correct in refusing to make findings of fact." *Id*.

In this case, SignAd's arguments are just as unavailing as those made by Personal Care Products. There were no facts to be found by the trial court because the facts were established by the Commission when it adopted the proposal for decision in its order. AR.2503–07. Thus, the trial court was left with determining the reasonableness of the Commission's order under substantial evidence review, which it decided in its final judgment. SCR.3.

Even assuming that SignAd is correct that the trial court should have issued findings of fact and conclusions of law, it still cannot show how that error would be prejudicial. "[A]n error is not prejudicial if a remand would amount to nothing more than a postponement of the inevitable." *Nissan N. Am., Inc. v. Tex. Dep't of Motor Vehicles*, 592 S.W.3d 480, 487 (Tex. App.—Texarkana 2019, no pet.) (citing *Lewis v. Metro. Sav. & Loan Ass'n*, 550 S.W.2d 11, 15 (Tex. 1977)) (quoting Frank Edward Cooper, *State Administrative Law*, at 403–04 (1965)) (internal quotation marks omitted). This results-focused standard mirrors Texas Rule of Appellate Procedure 44.1(a), which states:

> (a) Standard for Reversible Error. No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:
>
> > (1) probably caused the rendition of an improper judgment; or
> >
> > (2) probably prevented the appellant from properly presenting the case to the court of appeals.

*See also Nissan*, 592 S.W.3d at 487.

SignAd certainly has not been prevented from presenting its appeal to this Court. Indeed, it rehashes the same arguments made at the contested case hearing, AR.2156–72, and to the trial court, CR.34–62. SignAd even argues the same justifications for moving the Sign that the First Court of Appeals rejected in the companion condemnation case. *See SignAd*, 675 S.W.3d at 34–35. In other words, even if the trial court erred by not issuing findings of fact and conclusions of law, SignAd has still presented every aspect of this case that it has chosen to.

Moreover, remand to the trial court would only delay the inevitable. SignAd neglects to mention in its briefing that it reduced the Sign's support poles from five to four, and admits to having "adjusted" the Sign, which is simply an evasive way of saying it moved the Sign structure. SignAd Br. 10. Both actions represent substantial changes that SignAd made to the Sign without first obtaining and amended permit; or rather, in defiance of TxDOT's rejection of SignAd's amended permit application. This deliberate violation of TxDOT's rules forms the basis of the Commission's cancellation of SignAd's commercial sign permit, which was rightfully determined by the administrative law judge, and affirmed by the trial court.

## II. The trial court correctly affirmed the Commission's order canceling SignAd's commercial sign permit.

SignAd does not dispute it removed a pole and moved the Sign structure. Instead, SignAd claims its actions were justified because the work it performed on

the Sign did not amount to a substantial change. Yet TxDOT's rules clearly defined SignAd's removal of a pole and movement of the Sign as substantial changes.[7]

TxDOT must cancel a commercial sign permit if substantial changes are made to a nonconforming sign. 43 Tex. Admin. Code § 21.176(a)(5) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6272 (2024). This is because nonconforming signs in general may not be substantially changed. *See id*. § 21.150(c)(2) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6271 (2024). Former § 21.191 defines what activities constitute substantial changes. Relevant to this discussion are subsections (c)(2) and (8):

> (c) The following are examples of substantial changes that may be made but require an amended permit before the initiation of such an activity:
>
> > (2) changing the number of poles in the sign structure;
> >
> > (8) moving the sign structure or sign face in any way unless the movement is made in accordance with § 21.192 of this subchapter (relating to Permit for Relocation of Sign).

*See id*. § 21.191(c)(2), (8) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6275 (2024).

SignAd violated TxDOT's rules by removing a pole and by moving the Sign without an amended permit. These two bases are cited by the Commission in its

---

[7] TxDOT recently adopted new rules, which became effective on September 1, 2024. *See* 49 Tex. Reg. 6256 (2024). TxDOT will cite the version of the rules in effect at the time of SignAd's permit cancellation. A copy of all rules at issue in this case are attached as Appendix A.

order. AR.2505 ("SignAd made two substantial changes to the Sealy Sign without obtaining an amended permit from TxDOT: removing a pole and moving the Sign."). Independently, each of these violations make the cancellation of SignAd's permit mandatory. *See* 43 Tex. Admin. Code § 21.176(a)(5) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6272 (2024) (stating TxDOT will cancel a permit for a commercial sign if substantial changes are made to a nonconforming sign).

## A. The Commission properly canceled SignAd's permit because SignAd removed a support pole without an amended permit.

SignAd omits in its briefing that its removal of one support pole from the Sign was a reason for its permit cancellation. Nor did SignAd challenge the Commission's Factual Finding Number 9, stating SignAd removed a pole, in its motion for rehearing. *See* AR.2505. Therefore, the fact that SignAd removed a support pole from the Sign is undisputed.

SignAd's removal of a pole is corroborated by contrasting photographs of the Sign showing it with five poles and then four. AR.2858; *compare* AR.2524 *with* AR.2530. This was confirmed by SignAd's president and chief executive officer, Wes Gilbreath, who during cross-examination testified SignAd removed a pole:

> Q. Well, so you went ahead and did the word as described, removing a pole closest to the bridge over the railroad tracks?
>
> A. Yeah. We -- the pole was only removed because it was really close to that seven foot mark. You know, we were hoping we wouldn't even have to remove the pole, but to be on the safe side to make sure we set this sign back at least seven feet to make sure we were well

31

beyond that five foot setback requirement that we would be good to go. So we didn't want to have to deal with this again.

AR.2984.

Applying the obvious fact that SignAd removed a pole can only yield one conclusion: SignAd substantially changed the Sign as defined in former § 21.191(c)(2), which in turn constitutes a violation of former § 21.176(a)(5), mandating no substantial changes to nonconforming signs. Therefore, the Commission had no choice but to cancel SignAd's permit. *See* 43 Tex. Admin. Code § 21.176(a)(5) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6272 (2024). And no post-hoc justifications can yield a different result because TxDOT's rules did not provide any exceptions for removing a pole. The Commission properly canceled SignAd's permit, and on this fact alone, the trial court's judgment should be affirmed.

## B. The Commission properly canceled SignAd's permit because SignAd moved the Sign structure without an amended permit.

SignAd does not dispute that it moved the Sign. But unlike its removal of the pole for which it gives no explanation, SignAd argues it was entitled to move the Sign pursuant to TxDOT's rules. SignAd Br. 17. Implicit in this argument is that changing a commercial sign is an automatic process that can be navigated without TxDOT's knowledge or approval. SignAd Br. 18–22. Not so. TxDOT's rules required SignAd to either secure an amended permit to reposition the Sign away

from a partial bisection by the expanded right of way line, or obtain a relocation permit for a new location. In this case, TxDOT denied SignAd's amended permit application and SignAd forfeited its relocation option; meaning neither TxDOT, nor its rules, authorized SignAd's movement of the Sign structure.

Former § 21.192(d) gave TxDOT discretion to amend SignAd's existing permit if only part of the Sign was impacted by a construction project. That rule stated, "[n]otwithstanding other provisions of this section, if only a part of a sign will be located within the highway right of way as a result of the construction project, the sign owner *may apply to amend the existing permit* for the sign." 43 Tex. Admin. Code § 21.192(d) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6278 (2024) (emphasis added). TxDOT could have allowed three types of sign movements under this rule: (1) the adjustment of a sign face, (2) the relocation of poles and sign face, or (3) the reduction of a sign's size. *Id*.[8] These alterations seek to modify a sign to avoid a partial bisection by an expanded right of way line. Crucially, any work on a commercial sign performed under § 21.192(d) would have still required SignAd to first secure an amended permit from TxDOT.

There is a limitation to modifying a sign using former § 21.192(d). "An amended permit will not be issued for a substantial change as described by

---

[8] While former § 21.192(d)(2) allows for the relocation of poles, it does not allow commercial sign owners to outright change the number of poles like SignAd did in this case. 43 Tex. Admin. Code § 21.192(d)(2) (2018) *repealed or amended by* 49 Tex. Reg. 6256, 6278 (2024).

§ 21.191(c) of this subchapter to a nonconforming sign." *Id*. § 21.174(d) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6271–72 (2024). One such substantial change is moving the sign structure in any way. *See id*. § 21.191(c)(8) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6275 (2024). This was the reasoning behind TxDOT's executive director's decision denying SignAd an amended permit. AR.2582–84.

This leads SignAd to complain TxDOT should have granted its amended permit application. SignAd Br. 17. But again, TxDOT's denial of SignAd's permit application is not subject to judicial review. *See KEM Tex.*, 2009 WL 1811102, at *5 ("the legislature did not provide parties seeking outdoor advertising permits a right to judicial review of these determinations or of TxDOT's ultimate final order denying such permits."). As a result, the question of whether TxDOT's executive director's decision was correct is irrelevant. SignAd cannot be allowed to openly disregard TxDOT's regulations and then defend against the cancellation of its permit by arguing here that its application for an amended permit was wrongly denied. As SignAd acknowledges, the legislature did not create a right of judicial review of a permit denial. SignAd Br. 9.

In hindsight, TxDOT's decision to deny SignAd an amended permit proved correct. SignAd had asked in its application to move the Sign's face and necessary poles from the proposed right of way expansion. AR.2711–15. But TxDOT's

executive director and staff observed that "moving the poles and face would still leave the sign in the right of way." AR.2584. This explains why Wes Gilbreath of SignAd decided to remove a pole from the Sign. *See* AR.2984. SignAd's proposed changes in its amended permit application were not possible without substantially changing the Sign.

SignAd also forfeited its opportunity to obtain a relocation permit. Excluding subsection (d), all other subsections under former § 21.192 contemplate relocation. *See* 43 Tex. Admin. Code § 21.192(a)–(c), (e), (f) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6278 (2024). Relocation would have required SignAd to timely remove the Sign from a TxDOT construction project site in exchange for a relocation permit. *See id.* § 21.192(a) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6278 (2024). That did not happen because SignAd caused the State to initiate a condemnation proceeding to acquire the Sign instead of coordinating to remove it. *See SignAd*, 675 S.W.3d at 22. This is compounded by the fact that SignAd also rejected its relocation permit option in a formal letter to TxDOT. AR.2697–700.

Finally, there is no language in former § 21.192 that creates an entitlement to an amended permit or relocation permit. As recognized by the administrative law judge, "[r]ule 21.192(d) merely permits a sign owner to apply for relief through an amended permit." AR.2470. And subsection (a) states a sign which is timely

35

removed from a TxDOT site *may* be relocated. *Id.* § 21.192(a) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6278 (2024).

In conclusion, SignAd's claim that it was entitled to move the Sign under former § 21.192 should be rejected. TxDOT was vested with discretion to reject SignAd's amended permit application, from which there was no right to appeal after TxDOT's executive director made his decision. SignAd's other "entitlements" under the remaining subsections of § 21.192 contemplate relocation of a sign in a new location and with a new permit. SignAd would not have qualified for a relocation permit because it failed to timely remove the Sign and rejected its relocation options. Therefore, SignAd was never entitled to move the Sign.

## III.    SignAd waived its third and fourth issues presented because its motion for rehearing fails to preserve error.

SignAd failed to preserve error for its third and fourth issues presented. Its motion for rehearing of the Commission's order does not address any of its so-called entitlements to move the Sign under the terms of the prior settlement agreement, and by extension, receive attorney's fees from that agreement. AR.2508–19. Rather than detailing specific assignments of error for those issues, the motion contains a footnote incorporating previously filed documents by reference.AR.2508. But this incorporation of past pleadings violates the particularity requirements to preserve error on judicial review. As a result, SignAd's issues concerning the prior settlement agreement and attorney's fees are waived.

36

**A.** **A motion for rehearing must identify errors with particularity to preserve error.**

The contents of a motion for rehearing "determine whether error has been preserved for judicial review." *Hill v. Bd. of Trs. of the Ret. Sys. of Tex.*, 40 S.W.3d 676, 679 (Tex. App.—Austin 2001, no pet.). The purpose of the motion is to "apprise the regulatory agency of the error claimed and to allow the agency opportunity to correct the error or to prepare to defend it." *Burke v. Cent. Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (citing *Suburban Util. Corp. v. Pub. Util. Comm'n of Tex.*, 652 S.W.2d 358, 365 (Tex. 1983)). The standard is fair notice to the regulatory agency. *BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*, 93 S.W.3d 570, 578 (Tex. App.—Austin 2002, pet. denied).

To preserve error, two elements must be present in a motion for rehearing. "The motion must set forth: (1) the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests." *Id*. These "two elements may not be supplied solely in the form of generalities." *Burke*, 725 S.W.2d at 397.

The Third Court of Appeals first defined the twin elements to preserve error in *Burke*. In that case, teacher John Burke contested a school district's decision to not renew his contract. *Id*. at 394. He appealed the decision to the State Commissioner of Education, who affirmed the district's decision. *Id*. Burke then requested review of the State Commissioner's decision by the State Board of

37

Education, which again sided with the district. *Id*. at 395. Burke filed a motion for rehearing before the State Board of Education, assigning several errors to the administrative proceedings. *Id*. The State Board of Education overruled the motion. *Id*. In a subsequent suit for judicial review, the school district moved for summary judgment, contending Burke's motion for rehearing failed to preserve error for judicial review because it was vague. *Id*. The trial court granted the district's summary judgment motion. *Id*. Burke appealed.

The Third Court of Appeals concluded that two differing provisions of law conflicted, and the trial court erred in rendering summary judgment in favor of the district. *Id*. The Supreme Court reversed the Third Court's judgment without mentioning the conflicting laws and remanded the case to the appellate court to determine whether Burke's motion for rehearing before the State Board of Education, was sufficiently specific. *Id*.

On remand, the Third Court concluded Burke's motion for rehearing was insufficient to obtain judicial review of his contentions of error, and that the trial court correctly awarded summary judgment. *Id*. at 400. To meet the Supreme Court's fair notice standard, the Third Court held:

> [T]he complaining party must in his motion for rehearing set forth
> succinctly at least two elements pertaining to *each* contention of error:
> (1) the particular finding of fact, conclusion of law, ruling, or other
> action by the agency which the complaining party asserts was error; and
> (2) the legal basis upon which the claim of error rests. Without these
> irreducible elements, we do not conceive that any assignment of error

38

will apprise the agency of the error claimed so that it may correct the error or prepare against the contention that it is error.

*Id*. at 397.

The Third Court rejected Burke's argument that Texas Rule of Civil Procedure 58 "permitted him to adopt by reference any contentions of error that he might have made in other papers in the administrative proceeding, thereby supplying any particularity omitted in the motion for rehearing itself." *Id*. at 399. It observed the Rules have no place in administrative proceedings except by way of analogy. *Id*. And any attempt to incorporate pleadings by reference had the effect of "imposing upon the agency a burden of finding its own errors in order that they might be corrected." *Id*.

Since *Burke*, Texas courts have enforced the particularity standard in motions for rehearing. Those that fail to meet the twin elements for each contention of error do not preserve those points for appellate review. *See e.g., BFI*, 93 S.W.3d at 578 (because movant "did not complain in its motion for rehearing about the Commission's failure to make findings and conclusions on permit duration, this issue was not preserved for review."); *Leonard v. Tex. Med. Bd.*, 656 S.W.3d 456, 462 (Tex. App.—El Paso 2022, pet. denied) (holding medical doctor failed to preserve error because challenges in his motion for rehearing were unrelated to those now sought on appeal.); *Tex. Comm'n on Env't Quality v. Barua*, 632 S.W.3d 726, 733 (Tex. App.—El Paso 2021, pet. denied) (Appellee's "motion for rehearing fails

to articulate, even in a general sense, how the administrative judge erred," therefore "Appellee failed to sufficiently preserve error regarding his complaint.").

In 2015, the legislature amended the Administrative Procedure Act to require that motions for rehearing specifically identify errors allegedly made in an agency order. *See* Act of May 22, 2015, 84th Leg., R.S., ch. 625, § 9, 2015 Tex. Gen. Laws 2058 (codified at Tex. Gov't Code § 2001.146(g)). This act memorialized the elements established in *Burke* in a new subsection to Texas Government Code § 2001.146:

> (g) A motion for rehearing must identify with particularity findings of fact or conclusions of law that are the subject of the complaint and any evidentiary or legal ruling claimed to be erroneous. The motion must also state the legal and factual basis for the claimed error.

Tex. Gov't Code § 2001.146(g). As a result, specificity in motions for rehearing have been required by both statute and case law since 2015.

**B.      SignAd did not identify with particularity alleged errors regarding the settlement agreement and attorney's fees in its motion for rehearing.**

Glaringly absent from the body of SignAd's motion for rehearing is any specific mention of the prior settlement agreement and attorney's fees. AR.2508–19. At most, the motion cites prior pleadings in a footnote without supplying any particularity. AR.2508. But under *Burke* and § 2001.146(g) of the Texas Government Code, TxDOT is not required to divine the meaning behind SignAd's motion for rehearing if claimed errors are not identified with particularity. Because

the motion for rehearing only mentions prior pleadings and not the alleged points of error SignAd now brings, the Commission is left with no choice but to guess SignAd's subjective intentions. *See Burke*, 725 S.W.2d at 397. This is not particularity. As a result, SignAd's excuses for moving the Sign under the settlement agreement and its claim for attorney's fees are waived. *See Barua*, 632 S.W.3d at 733; *BFI*, 93 S.W.3d at 578.

Moreover, other courts have rejected similar arguments that incorporations by reference satisfy the particularity requirements in a motion for rehearing. The Third Court in *Burke* found that a footnote adopting the administrative record lacked particularity because it imposed upon the agency a burden of finding its own errors for correction. *Id.* at 399. This point was reaffirmed by the First Court of Appeals, which held, "[m]ere recitals of testimony or references to, or summations of, evidence are improper and do not satisfy the requirement to support fact-findings set forth in statutory language." *Live Oak Resort*, v. *Tex. Alcoholic Beverage Comm'n*, 920 S.W.2d 795, 799 (Tex. App.—Houston [1st Dist.] 1996, no writ). And the Third Court "suggested in dicta that a motion might not provide sufficient detail by merely referring to a previous pleading." *Tex. Water Comm'n v. Customers of Combined Water Sys., Inc.*, 843 S.W.2d 678, 682 (Tex. App.—Austin 1992, no writ).

SignAd's footnote also references prior pleadings that raised multiple issues, thus leaving the Commission to contrast the pleadings on file with those actually

raised in SignAd's motion for rehearing. This analysis—at a minimum—would require the Commission to guess SignAd's subjective intentions. *See Burke*, 725 S.W.2d at 397.

Lastly, TxDOT was not required to point out deficiencies in SignAd's motion for rehearing. At least one court "decline[d] to require the agency to point out the deficiencies in a motion for rehearing." *Everitt v. Emps. Ret. Sys. of Tex.*, No. 03-99-00400-CV, 2000 WL 263124, at *3 (Tex. App.—Austin Mar. 9, 2000, no pet.) (not designated for publication). This holding is consistent with the rationale behind a motion for rehearing, which requires the movant to apprise the regulatory agency of claimed errors, and not the other way around. *See Suburban Util. Corp.*, 625 S.W.2d at 365.

Ultimately, SignAd had the burden to notify the Commission of its claimed errors. No such fair notice can be found in the body of its motion for rehearing, nor can a footnote referring to prior pleadings preserve error to the degree of specificity required by precedent and § 2001.146(g) of the Government Code. For these reasons, SignAd waived its third and fourth issues by failing to preserve error.

## IV.    The prior settlement agreement is not relevant to TxDOT's enforcement action in this case.

Even if SignAd had not waived its third and fourth issues, SignAd still cannot use the terms of the prior settlement agreement to justify its substantial changes to the Sign and request for attorney's fees. The settlement agreement does not contain

any language permitting SignAd's removal of a pole and movement of the Sign without first obtaining an amended permit. Nor can SignAd tie the settlement agreement to TxDOT's enforcement action in this case because separate rule violations are at issue. For this same reason, the settlement agreement also cannot be used as a pretext for attorney's fees, assuming SignAd can defeat TxDOT's sovereign immunity on that issue.

A. **The settlement agreement contains no language justifying SignAd's substantial changes to the Sign.**

The plain language of the prior settlement agreement speaks for itself. SignAd cannot cite to any provision of the settlement agreement stating it allowed SignAd to reduce the poles and move the Sign over half a decade later. *See* AR.2676–80. And while the settlement agreement does state "TxDOT will reinstate and honor Permit No. 080248 as the *current* operating permit for the Sign," such language cannot be reasonably interpreted to give SignAd carte blanche permission to make unauthorized changes to the Sign whenever it desires. *See* AR.2677 (emphasis added). Especially in violation of former § 21.176(a)(5), which required the cancellation of SignAd's permit for substantial changes to the Sign. *See* 43 Tex. Admin. Code § 21.176(a)(5) (2018), *repealed or amended by* 49 Tex. Reg. 6256, 6272 (2024).

**B.**     **This case does not arise out of a dispute over the settlement agreement.**

SignAd cannot marry the prior enforcement action with this case to defend the substantial changes it made to the Sign and request for attorney's fees. SignAd repeatedly acknowledges the reasons for TxDOT's cancellation of its permit are different this time around. For example, in its petition for judicial review, SignAd states the prior dispute was centered on a purported violation of former 43 Texas Administrative Code § 21.148(3). CR.3–4; *see also* SignAd Br. 23. That prior enforcement action was borne out of a private complaint regarding the Sign's location deep within the projected right of way. AR.2669. Whereas the Commission's order in this case never suggests cancellation of SignAd's permit for that reason. Instead, it only restates the Sign is nonconforming. AR.2504–06. As a result, there is no link between this case and the alleged violations that eventually gave rise to the prior settlement agreement.

Lastly, if SignAd truly believed there was a legitimate disagreement over the terms of the prior settlement, then it would have filed suit for breach in Harris County under the terms of that agreement. AR.2678. That did not happen. Instead, SignAd uses the settlement agreement as a pretext to justify its actions and extract unauthorized attorney's fees.

## C. The settlement agreement does not authorize attorney's fees for this case.

SignAd is not entitled to attorney's fees because on its face, the prior settlement agreement does not apply to this enforcement action. The settlement agreement provides for attorney's fees "[i]n the event of any proceeding arising out of any disagreement between the Parties resulting from any provision of this Release." AR.2679. But all the settlement agreement did was establish that the Sign was legally nonconforming due to its location in the projected right of way. AR.2944. In contrast, this case arises out of SignAd's substantial changes to the Sign requiring the cancellation of its permit. Therefore, the attorney's fees provision is inapplicable to this case.

## D. TxDOT's sovereign immunity from suit is not waived by the settlement agreement.

Finally, even if this Court found SignAd correctly preserved its issues for review, and that the prior settlement agreement was applicable to this case, SignAd would still not be entitled to attorney's fees because TxDOT retains its sovereign immunity. This is because SignAd has not identified any statutory or constitutional provision waiving TxDOT's sovereign immunity from suit for attorney's fees.

"The State and other state agencies like TxDOT are immune from suit and liability in Texas unless the legislature expressly waives sovereign immunity." *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). "The Legislature may consent to suits

against the State by statute or by resolution" *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853–54 (Tex. 2002) (citing *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001)). Legislative consent must be expressed in "clear and unambiguous language." Tex. Gov't Code § 311.034.

Here, SignAd relies on an argument that TxDOT contracted away its sovereign immunity that would have otherwise barred the recovery of attorney's fees. SignAd Br. 26. This argument crumbles because SignAd does not identify any statutory provision waiving TxDOT's sovereign immunity. *Id*. Moreover, supposing SignAd is correct TxDOT waived its sovereign immunity from liability by entering into the prior settlement agreement, TxDOT did not waive its immunity from suit. *See IT-Davy*, 74 S.W.3d at 854; *Catalina Dev., Inc. v. Cnty. of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003). For this reason, SignAd erroneously claims this enforcement action served as the catalyst to waiving immunity.

SignAd's argument violates fundamental principles of sovereign immunity. Generally, a governmental entity such as TxDOT can only waive sovereign immunity from suit should it join into the litigation process "by asserting its own claims for monetary relief." *Reata Const. Corp. v. City of Dall.*, 197 S.W.3d 371, 376 (Tex. 2006). This is known as the abrogation of immunity rule. *See id.* at 377. However, an exception to this rule applies when a state agency initiates litigation to enforce a substantive prohibition against unlawful conduct by imposing a monetary

46

penalty. *Nazari v. State*, 561 S.W.3d 495, 507 (Tex. 2018). That is because "[s]overeign immunity protects the state from counterclaims that seek to offset a penalty." *Id*.

TxDOT falls under the exception to the abrogation of immunity rule. The rule *never* applies when a state agency initiates litigation to enforce a penalty against unlawful conduct. *Id.*; *see also* Tex. Transp. Code § 391.003 (stating a violation of TxDOT's rules is an illegal offense). To hold otherwise, would violate the contours of sovereign immunity in enforcement actions across Texas.

But this Court should never reach an analysis of attorney's fees and sovereign immunity because there are other hurdles that SignAd simply cannot overcome. Namely, SignAd cannot prove the Commission improperly canceled its permit because SignAd intentionally disregarded TxDOT's rules. Just as SignAd cannot claim it preserved error by incorporating pleadings by reference in violation of the Administrative Procedure Act's particularity standard. Nor can SignAd link the prior settlement agreement to this case, which contains no reference to the rules the Commission found SignAd violated in its order. Taken as a whole, the trial court was correct to issue a judgment affirming the Commission's order.

## PRAYER

For these reasons, the Texas Department of Transportation requests that this Court affirm the trial court's judgment and thus the order of the Texas Transportation Commission.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

NANETTE M. DINUNZIO
Chief, Transportation Division

/s/Joshua Longi
JOSHUA LONGI
State Bar No. 24095228
joshua.longi@oag.texas.gov
Assistant Attorney General
Transportation Division
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 383-6280
Fax Number: (512) 936-0888

ATTORNEY FOR APPELLEE,
TEXAS DEPARTMENT OF
TRANSPORTATION

## CERTIFICATE OF COMPLIANCE

This is to certify that this Brief contains 11,427 words, and is in compliance with the Texas Rules of Appellate Procedure 9.4(i).

/s/Joshua Longi
JOSHUA LONGI
Assistant Attorney General


## CERTIFICATE OF SERVICE

This is to certify that on the January 21, 2025, a true and correct copy of the foregoing *Brief of Appellee Texas Department of Transportation*, has been served on the following:

**Via Electronic Service**
Richard L. Rothfelder
rrothfelder@rothfelderfalick.com
Christopher W. Rothfelder
crothfelder@rothfelderfalick.com
Rothfelder & Falick, L.L.P.
1517 Heights Blvd.
Houston Texas 77008

ATTORNEYS FOR APPELLANT
SIGNAD, LTD.

/s/Joshua Longi
JOSHUA LONGI
Assistant Attorney General

# APPENDIX

| Tab | Item |
|-----|------|
| A. | 43 Tex. Admin. Code § 21.150 (2018), *repealed or amended by* 49 Tex. Reg. 6256 (2024) |
| | 43 Tex. Admin. Code § 21.174 (2018), *repealed or amended by* 49 Tex. Reg. 6256 (2024) |
| | 43 Tex. Admin. Code § 21.176 (2018), *repealed or amended by* 49 Tex. Reg. 6256 (2024) |
| | 43 Tex. Admin. Code § 21.191 (2018), *repealed or amended by* 49 Tex. Reg. 6256 (2024) |
| | 43 Tex. Admin. Code § 21.192 (2018), *repealed or amended by* 49 Tex. Reg. 6256 (2024) |

Texas Administrative Code
  Title 43. Transportation
    Part 1. Texas Department of Transportation
      Chapter 21. Right of Way
        Subchapter I. Regulation of Signs Along Interstate and Primary Highways
          Division 1. Signs

This section has been updated. Click here for the updated version.

43 TAC § 21.150

§ 21.150. Continuance of Nonconforming Commercial Signs

Effective: March 14, 2018 to August 31, 2024

(a) Notwithstanding other provisions of this subchapter, the department will renew a permit for a nonconforming sign only if the sign structure was lawfully erected and has been maintained in accordance with the permit being renewed.

(b) A sign that was legally erected before March 3, 1986 in a railroad, utility, or road right of way that is not owned by the state or a political subdivision may be maintained as a nonconforming sign if all other requirements of this subchapter are met.

(c) A nonconforming sign may not be:

    (1) removed and re-erected for any reason, other than a request by a condemning authority; or

    (2) substantially changed, as described by §21.191 of this subchapter (relating to Repair and Maintenance of Commercial Signs).

**Credits**
**Source:** The provisions of this §21.150 adopted to be effective July 1, 2011, 36 TexReg 2418; amended to be effective March 14, 2018, 43 TexReg 1446.

43 TAC § 21.150, 43 TX ADC § 21.150

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Texas Administrative Code
  Title 43. Transportation
    Part 1. Texas Department of Transportation
      Chapter 21. Right of Way
        Subchapter I. Regulation of Signs Along Interstate and Primary Highways
          Division 1. Signs

This section has been updated. Click here for the updated version.

43 TAC § 21.174

§ 21.174. Amended Permit

Effective: March 14, 2018 to August 31, 2024

(a) To perform customary maintenance or to make substantial changes to a commercial sign under §21.191 of this subchapter (relating to Repair and Maintenance of Commercial Signs) a permit holder must obtain an amended permit before initiating any action to the sign structure. To change the sign face of an existing permitted sign to an electronic sign under this subchapter, a permit holder must obtain an amended permit.

(b) To obtain an amended permit, the permit holder must submit an amended permit application on a form prescribed by the department. The amended permit application must provide the information required under §21.159 of this subchapter (relating to Permit Application) applicable to an amended permit and indicates the change from the information in the sign permit.

(c) The new sign face size, configuration, height, or lighting, must meet all applicable requirements of this subchapter.

(d) The holder of a permit for a nonconforming sign may apply for an amended permit to perform eligible customary maintenance under §21.191(b) of this subchapter. An amended permit will not be issued for a substantial change as described by §21.191(c) of this subchapter to a nonconforming sign.

(e) Making a change to a sign, except as provided by subsection (h) of this section, without first obtaining an amended permit is a violation of this subchapter and will result in an administrative enforcement action.

(f) The department will make a decision on an amended permit application within 60 days of the date of the receipt of the amended permit application. If the decision cannot be made within the 60 day period the department will notify the applicant of the delay, provide the reason for the delay and provide an estimate of when the decision will be made.

(g) If an amended permit application is denied, the applicant may file a request with the executive director for an appeal using the same procedures found in §21.170 of this subchapter (relating to Appeal Process for Permit Denials).

(h) If maintenance or changes authorized under this section are being made on a conforming sign because of a natural disaster, on request the department may waive the requirement that the required amended permit be issued before the work begins. If

the department grants a waiver under this subsection, the permit holder shall submit the amended permit application within 60 days after the date that the work is completed. If the maintenance or changes violate this section or the permit holder fails to submit the amended permit application as required by this subsection, the sign is subject to enforcement and removal actions.

(i) An amended permit is valid for one year after the date of the department's approval of the amended permit application. If any of the changes approved in the amended permit application are not completed within one year after the date of the department's approval, the license holder must reapply to make those changes and must pay the prescribed fee. The provisions of this subchapter relating to a permit apply to the amended permit. The date of the department's approval of the amended permit application is considered to be the amended permit's date of issuance.

(j) The documentation and fee required under this section must be sent to: Texas Department of Transportation, Highway Beautification Section, P.O. Box 13043, Austin, Texas 78711-3043 or submitted to the department electronically through the process established by the department.

(k) An amended application will not be approved to change the location of a permitted sign structure.

(l) A conforming commercial sign may be modified to be an electronic sign only if an amended permit for the electronic sign is obtained from the department.

**Credits**
**Source:** The provisions of this §21.174 adopted to be effective July 1, 2011, 36 TexReg 2418; amended to be effective April 19, 2012, 37 TexReg 2687; amended to be effective June 19, 2014, 39 TexReg 4668; amended to be effective March 14, 2018, 43 TexReg 1446.

43 TAC § 21.174, 43 TX ADC § 21.174

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Texas Administrative Code
  Title 43. Transportation
    Part 1. Texas Department of Transportation
      Chapter 21. Right of Way
        Subchapter I. Regulation of Signs Along Interstate and Primary Highways
          Division 1. Signs

This section has been updated. Click here for the updated version.

43 TAC § 21.176

§ 21.176. Cancellation of Permit

Effective: March 14, 2018 to August 31, 2024

(a) The department will cancel a permit for a commercial sign if the sign:

(1) is removed, unless the sign is removed and re-erected at the request of a condemning authority;

(2) is not maintained in accordance with this subchapter or Transportation Code, Chapter 391;

(3) is damaged beyond repair, as determined under §21.197 of this subchapter (relating to Discontinuance of Nonconforming Commercial Sign Due to Destruction);

(4) is abandoned, as determined under §21.181 of this subchapter (relating to Abandonment of Sign);

(5) has substantial changes made to a non-conforming sign in violation of this subchapter or Transportation Code, Chapter 391;

(6) is built by an applicant who uses false information on a material issue of the permit application;

(7) is erected, repaired, or maintained in violation of §21.199 of this subchapter (relating to Destruction of Vegetation and Access from Right of Way Prohibited);

(8) has been made more visible by the permit holder clearing vegetation from the highway right of way in violation of §21.199 of this subchapter;

(9) is located in an unzoned commercial or industrial area and the department has evidence that an activity supporting the unzoned commercial or industrial area was created primarily or exclusively to qualify the area as an unzoned commercial or industrial area; or

(10) is accessed, erected, repaired, or maintained from the right of way.

(b) The department will cancel a permit for a commercial sign if the sign owner:

(1) fails to cure a violation in accordance with §21.205 of this subchapter, (relating to Curable Commercial Sign Permit Violations); or

(2) fails to pay an administrative penalty under §21.204 of this subchapter, (relating to Administrative Penalties for Commercial Signs).

(c) Upon determination that a permit should be canceled, the department will mail a notice of cancellation to the address of the record permit holder. The notice must state:

(1) the reason for the cancellation;

(2) the effective date of the cancellation;

(3) the right of the permit holder to request an administrative hearing on the cancellation; and

(4) the procedure for requesting a hearing and the period for filing the request.

(d) A request for an administrative hearing under this section must be in writing and delivered to the department within 45 days after the date that the notice of cancellation is received.

(e) If timely requested, an administrative hearing will be conducted in accordance with Chapter 1, Subchapter E of this title (relating to Procedures in Contested Case) and the cancellation is abated until the cancellation is affirmed by order of the commission.

(f) A permit holder may voluntarily cancel a permit by submitting a request in writing after the sign has been removed. Subsections (c)-(e) of this section do not apply to a permit voluntarily canceled under this subsection.

**Credits**
**Source:** The provisions of this §21.176 adopted to be effective July 1, 2011, 36 TexReg 2418; amended to be effective June 19, 2014, 39 TexReg 4668; amended to be effective March 14, 2018, 43 TexReg 1446.

43 TAC § 21.176, 43 TX ADC § 21.176

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

> Texas Administrative Code
>   Title 43. Transportation
>     Part 1. Texas Department of Transportation
>       Chapter 21. Right of Way
>         Subchapter I. Regulation of Signs Along Interstate and Primary Highways
>           Division 1. Signs

This section has been updated. Click here for the updated version.

43 TAC § 21.191

§ 21.191. Repair and Maintenance of Commercial Signs

Effective: March 14, 2018 to August 31, 2024

(a) The following are considered to be routine maintenance activities that do not require an amended permit:

(1) the replacement of nuts and bolts;

(2) nailing, riveting, or welding;

(3) cleaning and painting;

(4) manipulation of the sign structure to level or plumb it;

(5) changing of the advertising message;

(6) the replacement of minor parts if the materials of the minor parts are the same type as those being replaced and the basic design or structure of the sign is not altered;

(7) changing all or part of the sign structure but only if materials similar to those of the sign structure being replaced are used; and

(8) upgrading existing lighting for an energy efficient lighting system.

(b) Except as allowed by Transportation Code, §391.038, the following are considered to be customary maintenance activities that may be made but require an amended permit before the initiation of such an activity:

(1) replacement of poles, but only if not more than one-half of the total number of poles of the sign structure are replaced in any 12 month period and the same material is used for the replacement poles; and

(2) adding a catwalk to the sign structure.

(c) The following are examples of substantial changes that may be made but require an amended permit before the initiation of such an activity:

(1) adding lights to an un-illuminated sign or adding additional lights or adding more intense lighting to an illuminated sign whether or not the lights are attached to the sign structure;

(2) changing the number of poles in the sign structure;

(3) adding permanent bracing wires, guy wires, or other reinforcing devices;

(4) changing the material used in the construction of the sign structure, such as replacing wooden material with metal material;

(5) adding faces to a sign or changing the sign configuration;

(6) increasing the height of the sign;

(7) changing the configuration of the sign structure, such as changing a "V" sign to a stacked or back to back sign, or a single face sign to a back-to back sign; and

(8) moving the sign structure or sign face in any way unless the movement is made in accordance with §21.192 of this subchapter (relating to Permit for Relocation of Sign).

(d) To add a catwalk to a sign structure the catwalk must meet Occupational Safety and Health Administration guidelines.

**Credits**
**Source:** The provisions of this §21.191 adopted to be effective July 1, 2011, 36 TexReg 2418; amended to be effective June 19, 2014, 39 TexReg 4668; amended to be effective March 14, 2018, 43 TexReg 1446.

43 TAC § 21.191, 43 TX ADC § 21.191

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Texas Administrative Code
  Title 43. Transportation
    Part 1. Texas Department of Transportation
      Chapter 21. Right of Way
        Subchapter I. Regulation of Signs Along Interstate and Primary Highways
          Division 1. Signs

This section has been updated. Click here for the updated version.

43 TAC § 21.192

§ 21.192. Permit for Relocation of a Commercial Sign

Effective: March 14, 2018 to August 31, 2024

(a) A commercial sign that has been timely removed from a department construction project site may be relocated in accordance with this section, §21.193 of this subchapter (relating to Location of Relocated Commercial Sign) and §21.195 of this subchapter (relating to Relocation of Sign within a Certified City) if the sign is legally erected and maintained and will be within the highway right of way as a result of a highway construction project or, under exceptional circumstances as determined by the executive director or the executive director's deputy if the sign is legally erected and maintained and the relocation will further the intended purposes of the Highway Beautification Act of 1965 (23 U.S.C. §§131, 136, 319).

(b) To relocate a sign under this section, the permit holder must obtain a new permit under §21.164 of this subchapter (relating to Decision on Application).

(c) To receive a new permit to relocate a sign under this section, the permit holder must submit a new permit application that identifies that the application is for the relocation of an existing sign due to a highway construction project. The new location must meet all local codes, ordinances, and applicable laws.

(d) Notwithstanding other provisions of this section, if only a part of a sign will be located within the highway right of way as a result of the construction project, the sign owner may apply to amend the existing permit for the sign to authorize:

(1) the adjustment of the sign face on a monopole sign that would overhang the proposed right of way and the required five foot setback from that location to the land on which the sign's pole is located, including adding a second pole if required to support the adjustment for a legal non-conforming monopole sign;

(2) the relocation of the poles and sign face of a multiple sign structure that is located in the proposed right of way from the proposed right of way and the required five-foot setback to the land on which the other poles of the sign structure are located; or

(3) a reduction in the size of a sign structure that is located partially in the proposed right of way and the required five-foot setback so that the sign structure and sign face are removed from the proposed right of way and the required five-foot setback.

(e) A permit application for the relocation of a sign must be submitted within 48 months after the earlier of the date the original sign was removed or the date the original sign was required to move. The sign owner is required to continue to renew the sign permit and pay the permit renewal fee for the sign to remain eligible for relocation. The relocation permit issued must be maintained in accordance with §21.172 of this subchapter (relating to Permit Renewals).

(f) To replace an issued and active relocation permit, an operator first must cancel the permit, then must reapply, pay the fee prescribed by §21.175 of this subchapter (relating to Permit Fees), and obtain approval for the new permit in accordance with subsection (a) of this section. The relocation process must be completed within the time requirements of subsection (e) of this section.

**Credits**
**Source:** The provisions of this §21.192 adopted to be effective July 1, 2011, 36 TexReg 2418; amended to be effective June 19, 2014, 39 TexReg 4668; amended to be effective March 14, 2018, 43 TexReg 1446.

43 TAC § 21.192, 43 TX ADC § 21.192

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ally Wickliffe on behalf of Joshua Longi
Bar No. 24095228
ally.wickliffe@oag.texas.gov
Envelope ID: 96443874
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellee Texas Department of Transportation
Status as of 1/21/2025 4:13 PM CST

Associated Case Party: SignAd, Ltd.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher W.Rothfelder | | crothfelder@rothfelderfalick.com | 1/21/2025 4:02:59 PM | SENT |
| Richard L.Rothfelder | | rrothfelder@rothfelderfalick.com | 1/21/2025 4:02:59 PM | SENT |

Associated Case Party: Texas Department of Transportation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joshua Longi | 24095228 | joshua.longi@oag.texas.gov | 1/21/2025 4:02:59 PM | SENT |
| Ally Wickliffe | | ally.wickliffe@oag.texas.gov | 1/21/2025 4:02:59 PM | SENT |